STATE of Minnesota, Petitioner,

v.

David Allen OSTERLOH, Respondent.

No. 48651.

Supreme Court of Minnesota.

Dec. 22, 1978.

Robert W. Kelly, County Atty., Stephen L. Muehlberg, Asst. County Atty., Stillwater, for petitioner.

John E. Walsh, Asst. Public Defender, Tenth Judicial District, Stillwater, for respondent.

Kimmel & Holsten, Stillwater, Peter D. Bergstrom, Assn. of Minnesota Counties, St. Paul, amicus curiae.

Heard before KELLY, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Gerald Osterloh pled guilty to felonious burglary. On September 1, 1977, the District Court of Washington County stayed imposition of the sentence and placed Osterloh under probation upon the condition that he complete a treatment program at Bremer House, a private institution operated by the Wilder Foundation. The trial court further ordered that Washington County pay the costs incurred at Bremer House. Washington County had no contractual arrangements with Bremer House. The county seeks a writ of prohibition, or, in the alternative, a writ of mandamus from this court. The writ of prohibition shall issue as to a portion of the trial court's order.

1. This case involves the question of separation of powers under our constitutional system of government and the inherent powers of the judicial branch of government. Initially, we observe that the courts,

being the final interpretative body as to constitutional matters, must exercise extreme care and caution when declaring its own powers under the constitution. However, as long as there remains the basic constitutional commitment to separate, co-equal, branches of government, the courts are singularly best equipped to define the constitutional powers of each branch. Thus, the courts must not only resist improper challenges to its constitutional powers, but must also diligently preserve the powers of the other branches of government.

The order of the trial court raises the issue of whether the courts have inherent power over the sentencing of criminal offenders. In the case of *In re Clerk of Court's Compensation for Lyon County,* 308 Minn. 172, 180–181, 241 N.W.2d 781, 786 (1976), this court set forth five principles governing the application of inherent power. Two of the principles are particularly relevant to the present case:

"(1) Inherent judicial power grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government. It comprehends all authority necessary to preserve and improve the fundamental judicial function of deciding cases.

\* \* \* \* \* \*

"(5) The test to be applied in these cases is whether the relief requested by the court or aggrieved party is necessary to the performance of the judicial function as contemplated in our state constitution. The test is not relative needs or judicial wants, but practical necessity in performing the judicial function. The test must be applied with due consideration for equally important executive and legislative functions."

These two principles indicate that the doctrine of inherent power applies only if a "judicial function" is involved. In *State ex rel. Ahern v. Young,* 273 Minn. 240, 243, 141 N.W.2d 15, 17 (1966), this court said:

"Determination of what conduct constitutes a criminal offense and the punishment that ought to be imposed (including the terms and conditions of probation, confinement, and parole) is peculiarly a legislative and not a judicial function."

Accord, *State v. Meyer,* 228 Minn. 286, 293, 37 N.W.2d 3, 9 (1949). See, also, *Cary v. Langum,* 112 Minn. 121, 125, 127 N.W. 465, 466 (1910).

Similarly, an overwhelming majority of state courts hold that their power to stay the imposition or execution of a sentence and to impose conditions of probation is a statutory power, not inherent power. See, e. g., *State v. Carter,* 116 Ariz. 595, 570 P.2d 763 (1977) (en banc); *State v. Gibson,* 16 Wash.App. 119, 553 P.2d 131 (1976); *State v. Sittig,* 75 Wis.2d 497, 249 N.W.2d 770 (1977). See, generally, Annotation, 73 A.L. R.3d 474; Annotation, 56 A.L.R.3d 932. The Federal courts, in accord with the leading case of *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916), also have consistently held that the judicial branch has no inherent power to suspend sentences and impose probation. See, e. g., *United States v. Pregerson,* 448 F.2d 404 (9 Cir. 1971); *United States v. Ellenbogen,* 390 F.2d 537 (2 Cir.), certiorari denied, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968). The Idaho and North Carolina courts hold that their power to suspend sentences is inherent. See, *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971); and *Shore v. Edmisten,* 290 N.C. 628, 632, 227 S.E.2d 553, 558 (1976); 51 N.C.L.Rev. 184. We find these authorities unpersuasive.

■ We conclude that the legislature, having the power to define what acts constitute criminal conduct, necessarily retains the power to define the punishment for such acts. The role of the trial judge in prescribing sentence in a criminal case is that of the executor of the legislative power. Thus, we hold that the trial judge had no inherent power to compel Washington County to pay for the rehabilitative treatment of Gerald Osterloh during probation. Instead, the trial judge had only the statu-

 

tory sentencing authority proscribed by the legislature.[1]

2. Having concluded that the trial court's sentencing power is statutory rather than inherent, we turn to the issue of whether the legislature empowered the trial court to order payment by Washington County. The basic statute governing suspension of sentences and imposition of probation appears in Minn.St. 609.135. This statute provides in part:

" * * * [A]ny court * * * to the extent otherwise authorized by law, may stay imposition or execution of sentence and place the defendant on probation with or without supervision and on such terms as the court may prescribe, including restitution when practicable."

Minn.St. 609.135, subd. 1 (Supp.1977). Although this provision might authorize treatment at the Bremer House as a condition of probation, we find nothing in this statute, nor any other statute,[2] authorizing the trial court to compel payment of public funds for such treatment.

3. Osterloh did not appear before the court either by counsel or brief. The Wilder Foundation was allowed to appear in this case because of its financial interest. Wilder Foundation raised the constitutional question of whether Osterloh was denied equal protection because of the lack of uniformity among counties concerning rehabilitation alternatives. This assignment of error involves the constitutional rights of Osterloh, not the financial rights of Wilder Foundation. Therefore, this court will not decide this constitutional question raised only by the Wilder Foundation. See, Mo-

cuik v. Svoboda, 253 Minn. 562, 566, 93 N.W.2d 547, 500 (1958); In re Wilson's Estate, 223 Minn. 409, 413, 27 N.W.2d 429, 431 (1947). Further, Wilder sought to raise an issue of estoppel or laches which we found to be without merit.

4. In conclusion, the trial court had no authority to compel payment by Washington County for Osterloh's treatment at Bremer House. However, at oral argument, we were advised that as of July 1, 1978, Washington County undertook participation in the community corrections program under Minn.St. 241.31 and § 241.32. Apparently, therefore, funds now exist for treatment such as that provided by the Bremer House.

We remand the matter to the trial court which may wish to amend its order nunc pro tunc as to Osterloh's expenses incurred at Bremer House after July 1, 1978.[3]

Remanded.

OTIS, J., took no part in the consideration or decision of this case.

---

1. This is illustrated by recent legislative enactment regarding minimum sentences for certain criminal acts. See, Minn.St. 609.11.

2. Statutes relating to community corrections programs, such as the Bremer House, indicate the legislature intended that such programs would be established and operated voluntarily by counties with financial assistance from the Department of Corrections. Minn.St. 241.31 and § 241.32 provide that cities, counties, and other municipalities may establish and operate a community corrections program for such persons as those "convicted of crime in the courts of this state and placed on probation by such

courts pursuant to § 609.135 * * *." Minn.St. 241.31, subd. 1(a). Under Minn.St. 401.01–401.16 (1976 and Supp. 1977), the commissioner of corrections is authorized to assist counties in the operation and financing of such programs. This extensive statutory scheme is strong evidence that the legislature contemplated creation and operation of such programs by the initiative of local legislative bodies, rather than by the initiative of courts.

3. It would appear that Wilder will have to present the balance of its claim to the Legislative Claims Commission.