Darryl **KISE**, Appellant,

v.

**PRODUCT DESIGN & ENGINEERING, INC., Respondent.**

**No. C3–89–1820.**

Court of Appeals of Minnesota.

April 3, 1990.

Barry G. Reed, Zimmerman Reed, Minneapolis, for appellant.

John W. Polley, Donald Peder Johnsen, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant Darryl Kise ("Kise") claimed that the request of his former employer, Product Design & Engineering ("PD & E") that he submit to a drug test after a job-related injury was arbitrary and capricious in violation of the Minnesota Drug and Alcohol Testing in the Workplace Act ("Act"). Kise also claimed that the Act requires reasonable and fair disclosure to employees of a company's drug testing policy. The trial court granted PD & E summary judgment on the grounds that no violations of the Act occurred. We affirm.

## FACTS

The Act, Minn.Stat. §§ 181.950–.957 (1988), governs employer drug testing of employees and became effective September 1, 1987. In November 1987, PD & E established a drug testing policy, applicable to employees and job applicants, in accordance with the Act. Kise received a copy of the policy, attended an informational meeting and signed a receipt indicating that he had read the policy, all prior to its effective date of November 23.

PD & E's policy states that any employee found abusing, selling, possessing or transferring drugs or alcohol while working will face immediate discharge. The policy states that current employees *may* be required to take a drug and alcohol test in the event they sustain or cause a work related personal injury requiring clinical treatment. The policy also states that any employee has the right to refuse the test and that employees who refuse or fail to take the test will face immediate discharge.

The policy also states that upon receipt of a positive, confirmatory test employees will be referred to a chemical dependency treatment program and that upon refusal to participate, or failure to successfully complete the program, the employee will be discharged but that upon a second positive test, an employee will be discharged immediately. The policy also states that all information obtained through drug and alcohol testing will be strictly confidential.

Kise freely admits to having been treated twice for chemical dependency and to having resumed use again. He admits having worked under the influence of drugs and/or alcohol. PD & E adopted its testing policy in response to overwhelming evidence of chemical abuse occurring on its property.

On January 20, 1988 at about 1:50 in the afternoon, Kise was injured on the job when he pinched, smashed or crushed his finger in a mechanism on a forklift. Kise testified that although he was wearing gloves, his skin was cut and broken on the affected finger. Kise immediately reported the injury to his shift foreman. This shift foreman located his shift supervisor who returned to inspect the injury and discuss it with Kise. She and Kise jointly concluded that Kise's injury required clinical treatment. She then presented a "consent to drug test form" for Kise to sign. By signing the consent form, the employee authorizes drug and alcohol testing pursuant to PD & E's policy and authorizes "the release of information within the company and outside the company as provided in Minnesota law."

Kise testified that when the shift supervisor asked him to sign the consent form, he objected and the shift supervisor then retrieved her supervisor and again requested Kise to sign the consent form. Kise admits that when the shift supervisor then inquired whether he knew the consequences of refusal, he replied yes, he could be fired. The plant supervisor then asked Kise to sign the form and Kise refused.

Kise testified that the shift supervisor brought him to the clinic for treatment. The injury did not require stitches and x-rays confirmed the finger was unbroken. The shift supervisor returned Kise to the

worksite, where the plant supervisor told Kise not to report to work the following morning but to instead report to the plant supervisor's office for a meeting at 9:00 a.m. Kise returned the next morning and the plant supervisor terminated Kise from employment for failure to consent to the drug and alcohol test.

In March of 1989, PD & E moved for summary judgment. PD & E argued that its request that Kise submit to a test was not arbitrary and capricious because Kise sustained a work related injury, the Act expressly authorizes testing in these circumstances, and Kise refused the test. PD & E claimed that the company's policy does not contain any requirement of reasonable and fair disclosure to employees.

Kise opposed summary judgment on the grounds that genuine issues of material fact exist as to whether the policy itself and/or its application are arbitrary and capricious and as to the notice and disclosure issues. In granting summary judgment for PD & E, the trial court necessarily decided that there were no genuine issues of material fact. The trial court ruled that PD & E's policy is to request a test on the day of an injury requiring medical attention. The trial court found that employees who were not tested were injured but not treated until "days later," a rational distinction explained by the diminished value of testing long after an accident has occurred. The trial court held that PD & E's policy met all of the requirements of the Act regarding content of policies and use and dissemination of test results. Kise appeals.

In the appendix to his appellate brief, Kise includes materials that were not a part of the trial court record below. PD & E has brought a motion to strike this material.

## ISSUES

1. Did the trial court err in granting summary judgment for PD & E on the basis that its policy was not arbitrary and capricious?

2. Did the trial court err in granting summary judgment for PD & E on the basis that the policy complied with Act requirements regarding content and confidentiality?

3. Should PD & E's motion to strike be granted?

## ANALYSIS

### I.

On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hospital & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Kise alleges both that a factual dispute exists and that the trial court erred in its application of the law. Of course, only a material factual dispute precludes summary judgment. Kise alleges a factual dispute regarding application of PD & E's drug testing policy to employees.

One employee was injured before Kise and several employees were injured later. All of these employee injury records were considered by the trial court, which then stated:

> The fact that some employees who were injured but did not receive treatment until days later were not tested, does not make defendant's policy arbitrary and capricious.

Another employee had sustained an injury less than two weeks earlier, but had not been required to take the test. Kise did not feel that his injury was as severe as this employee's injury. Records indicate that the previous injury occurred on Friday, January 8, 1988 and was apparently the first injury to occur after adoption of the drug test policy. That employee was injured near the end of his shift and he notified his foreman that day. The decision to obtain clinical treatment was not made by that employee and management at the worksite. The employee left work at his regular time and then immediately sought treatment which included stitches.

PD & E admits that when that employee reported to work the following Monday, January 11, he was initially requested to

take the drug and alcohol test and refused to do so. PD & E points out that it took no disciplinary action because it withdrew its drug test request. Kise has not demonstrated any material factual dispute; the parties dispute only the proper characterization of the undisputed facts.

PD & E argues that neither the policy nor its application is arbitrary and capricious because, with regard to other injured employees, the company itself did not know of the need for, or require, clinical treatment on the same day as the injury occurred.[1] The policy states that it *may* require a test of any employee who has sustained or caused a work related personal injury requiring clinical treatment.

The Act states in pertinent part:

An employer may not request or require an employee or job applicant to undergo drug or alcohol testing unless the testing is done pursuant to a written drug and alcohol testing policy that contains the minimum information required in section 181.952; * * * an employer may not request or require an employee or job applicant to undergo drug and alcohol testing on an arbitrary and capricious basis.

Minn.Stat. § 181.951, subd. 1(b) and (c).

Kise alleges that PD & E's drug test request was arbitrary and capricious because other employees have either not been required to submit to a test or have not faced the consequences of refusal that Kise is facing. The record discloses that the only employee injured before Kise did not obtain medical treatment until after he left the worksite. The employees injured after Kise who were not required to submit to a test, unlike Kise, did not receive immediate clinical treatment. PD & E was unaware until at least the next weekday that these employees had sought and received treatment. None of these employees was requested to submit to a drug test; therefore, none of the consequences of refusal were triggered. Employers do not have a legal duty to request or require the drug testing authorized by the Act. Minn.Stat. § 181.951, subd. 7.

The term "arbitrary and capricious" is not defined in the Act. The trial court determined that a decision is arbitrary and capricious "only where the decision lacks any rational basis." Because the Act permits testing of employees who have sustained work related injuries, the trial court found that PD & E's policy is to request testing only on the day an injury requiring medical attention occurs and held that this application is rational. The trial court held that the rationality of this distinction was not defeated by the fact that some employees were injured but did not receive treatment until later.

Because alcohol and drugs are detectable in the blood at greatly diminished and varying degrees with the passage of time, it is not arbitrary and capricious to refrain from testing employees who are not treated immediately after they are injured. *See McDonell v. Hunter,* 809 F.2d 1302 (8th Cir.1987) (permits testing upon a reasonable suspicion that an employee had consumed a controlled substance within the last 24 hours).

The issue is whether application to Kise of the written policy was arbitrary and capricious. Because the previously injured employee did not receive his test request until two and one-half days after injury and treatment, whereas Kise received his request immediately, there is a reasoned basis for the distinction between the two employees. Although the policy does not state unequivocally that employees will be fired upon refusal, Kise was aware that discharge was a possible consequence of his refusal.

PD & E's request that Kise submit to testing after receiving a personal injury which required clinical treatment was certainly not in conflict with its testing policy, and his consequent termination from employment for refusal does not constitute a violation of the Act.

1. One employee received treatment and then reported the injury the day it occurred, but both treatment and report occurred after work hours and the employee's supervisor was notified at his home, only after the employee had left the clinic.

## II.

Kise alleges that the written policy does not contain the contents required by the Act. A policy must reveal 1) the employees subject to testing, 2) the circumstances under which testing may be requested, 3) the right of an employee to refuse testing and the consequences thereof, 4) disciplinary or other adverse action which may be taken based upon a positive test, 5) the right of an employee to explain a positive test, and 6) any other appeal procedures available. Minn.Stat. § 181.952, subd. 1. Kise alleges that because PD & E only requires testing of employees whom it knows were injured and obtained treatment on the same day, and this limitation period is not disclosed in the policy, the policy fails to satisfy the disclosure requirements of the statute. This argument differs from that which Kise raised below, claiming that the Act requires "reasonable and fair disclosure" of the elements of a drug testing policy. The statute does not contain the words "fair" or "disclosure." The trial court correctly held that there is no requirement of reasonable and fair disclosure; rather, the Act sets forth the minimum contents that any policy must reveal.

The Act merely requires that an employer reveal the circumstances under which testing may be requested or required. PD & E's policy states that an employee may be required to test after having sustained or caused a personal injury requiring clinical treatment. PD & E has applied this policy conservatively, limiting testing to only those circumstances in which it would pertain to any relationship between injury and drug or alcohol use. Conservative application does not defeat statutory contents requirements. Kise's argument that the policy does not meet these requirements is unpersuasive.

Similarly, the trial court held that this policy met the statutory requirement of confidentiality. Minn.Stat. § 181.954. PD & E asserts that Kise is raising this issue for the first time on appeal and that it was neither briefed nor argued below. While no transcript of oral argument was provided, the trial court ruled on the issue, which it discussed in its memorandum. The issue is properly before us for review.

PD & E's written policy states: "All information obtained through drug and alcohol testing will be strictly confidential." The applicable statute requires that test result reports and other information acquired in the testing process are private and confidential information which may not be disclosed by an employer. Minn.Stat. § 181.954, subd. 2. Nonetheless, evidence of a positive confirmed test may be used in judicial and other proceedings, may be disclosed as required by federal laws and may be disclosed to treatment facilities for evaluation of the employee. Minn.Stat. § 181.954, subd. 3. Positive test results may not be used as evidence in a criminal action. Minn.Stat. § 181.954, subd. 4.

The consent form presented to Kise states in part: "I hereby consent to undergo drug/alcohol testing * * * and to the release of information within the company and outside the company as provided in Minnesota law." Disclosure within and outside the company in accordance with Minnesota law cannot conflict with statutory requirements of confidentiality; it refers to and complies with them. Thus, the trial court correctly ruled that both the written policy and the consent form met all statutory requirements.

## III.

The record on appeal consists of papers filed in the trial court, their exhibits and any transcript of proceedings. Minn. R.Civ.App.P. 110.01. PD & E has brought a motion to strike Exhibits F and H in their entirety and a handwritten notation on page 8 of Exhibit K, all in Kise's appendix. Those items were not a part of the record received from the trial court. We grant the motion to strike the two named exhibits and the handwritten notation.

## DECISION

We affirm the decision of the trial court. Kise was aware of the written policy and of the potential consequences of refusal. PD

& E's policy and its application to Kise are not arbitrary and capricious in violation of the Act.

Affirmed.