STATE of Minnesota, Respondent,

v.

Randy Lee MORROW, Appellant.

No. C7–92–1295.

Court of Appeals of Minnesota.

Nov. 17, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael A. Fahey, Carver County Atty., Tara E. Keehr, Asst. County Atty., Chaska, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant asserts that the sentencing court abused its discretion and violated the Due Process and Equal Protection Clauses of the United States and Minnesota Constitutions when it revoked his probation and executed a 34–month prison sentence. The court originally conditioned probation upon appellant's successful completion of an inpatient sex offender treatment program. When the county refused to fund the treatment and appellant, because he is indigent, could not afford to pay for treatment himself, the court revoked appellant's probation. We affirm.

## FACTS

Appellant pleaded guilty to three counts of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343, subd. 1(a) (1990). The conduct underlying appellant's convictions involved sexual contact with three young girls and sexual penetration of one of the three girls. All three girls were friends of appellant's daughter.

At the sentencing hearing, appellant requested a dispositional departure from the presumed executed sentence, which would result in probation for all three offenses. Availing himself of residential treatment, appellant argued, would make him less likely to reoffend.

The state and appellant presented the results of the presentence investigation regarding the feasibility of sex offender treatment as an alternative to prison. Appellant was evaluated by two treatment programs: Intensive Treatment Program for Sexual Aggressives (ITPSA) at St. Peter State Hospital and Alpha Human Services (Alpha) in Minneapolis. ITPSA determined that appellant was not an appropriate candidate for its program. A psychologist at ITPSA testified that appellant required intensive residential treatment and that appellant was a risk to reoffend. ITPSA "could not recommend a less restrictive alternative."

Alpha's intake director testified that appellant was an appropriate candidate for its sex offender program. He testified that appellant, without intensive inpatient treatment, would likely reoffend. Neither Alpha nor ITPSA recommended outpatient treatment.

Applying *State v. Hernandez*, 311 N.W.2d 478, 481 (Minn.1981), the court sentenced appellant on October 24, 1991, to twenty-one months stayed on the first offense, twenty-six months stayed on the second offense, and thirty-four months executed on the third offense. The sentencing court stated that it was first inclined to execute the sentence:

I was going to commit [appellant] and I just am not willing to allow him back on the street in three years or two years without at least attempting what I con-

sider a very structured treatment program.

The court, however, granted appellant's motion for a dispositional departure and placed him on probation for 15 years. The court imposed several conditions on appellant's probation, including that he enter and complete inpatient treatment at Alpha.

Alpha's residential treatment program requires an average of 29 months to complete. For eighteen of those months, the patient resides at Alpha, which is not a locked facility. The eleven month postresidential phase involves community integration and aftercare. The estimated cost of the residential treatment phase is approximately $34,500, or $63 per day for eighteen months.

While some counties fund treatment at Alpha, Alpha's intake director informed the court at the conclusion of the sentencing hearing that it should not assume that Carver County would fund appellant's treatment at Alpha. The court asked: "[t]hen what happens? Then are we back here? What happens if the county does not want to pay for this?" Alpha's intake director stated that typically the defendant goes to prison or must pay for the treatment himself.

The court reviewed the sentence on December 3, 1991, on motion from appellant's parole officer for possible execution of the stayed sentence. The parole officer informed the court that Carver County had no funding for sex offender treatment. The court stated:

> I guess I'll say it one more time because evidently the prosecutor didn't hear me the last time, but treatment continues to be an important issue in my mind and, you know, prison certainly may redress the past harm but it certainly * * * doesn't do much * * * for a safe future.

The court required that the parties continue to explore financing options.

Appellant attempted to obtain funding from Carver County. However, Carver County refused to fund appellant's treatment at Alpha. Appellant challenged the county's denial of funding to the state Commissioner of Human Services. In af-

firming the county's denial, the Commissioner stated:

> While petitioner would find such a service desirable and an attractive alternative to a prison sentence, the county is under no obligation to fund or otherwise arrange for such a service.

On April 17, 1992, the court again reviewed appellant's sentence. Both the state and appellant presented evidence regarding the latest attempts to fund treatment at Alpha. The court revoked appellant's probation after it concluded that all funding options had been exhausted and appellant neither had funds nor insurance to cover the costs himself. Appellant explained that he sought admission into the outpatient treatment program at the University of Minnesota. However, the court clearly conveyed that outpatient treatment was not appropriate for appellant. In committing the appellant to the Commissioner of Corrections, the court stated:

> I hope you avail yourself of whatever treatment is available [in prison]. I don't know what it is. It was the one small bit of assurance that I thought I could give to the victims and the parents that some other family might not be here in two years suffering as they have for some actions such as you may do without treatment. I'm not so sure I can give them that assurance today.

Appellant expressed concern that treatment would not be available in prison because of his shorter sentence and the waiting periods to enter sex offender treatment. Appellant's probation officer advised the court that treatment might be available at Stillwater State Prison. The court stayed the commitment order and investigated the possibility of immediate treatment for appellant at Stillwater. The court confirmed that a treatment program was available to appellant and that he would be given priority to enter and complete the program during the period of his incarceration. On April 30, 1992, the court lifted the stay of commitment.

## ISSUES

1. Did the sentencing court abuse its discretion and violate appellant's rights to

due process and equal protection when it revoked appellant's probation, originally conditioned upon appellant's completion of sex offender treatment, where the county would not fund and appellant could not afford to pay for the treatment himself?

2. Should this court grant appellant's motion to strike a portion of respondent's appendix?

## ANALYSIS

### I.

Appellant claims that the sentencing court abused its discretion when it revoked his probation and that the revocation violated the Equal Protection and Due Process Clauses of the United States and Minnesota Constitutions.

### A.

■ The sentencing court has broad discretion in determining whether sufficient evidence exists to revoke probation. *State v. Austin,* 295 N.W.2d 246, 249–50 (Minn.1980). Absent a clear abuse of discretion, this court will not reverse the sentencing court's decision to revoke probation. *Id.* We find no abuse of discretion.

Under Minn.Stat. § 609.135 (1990) except as otherwise provided:

> any court may stay imposition or execution of sentence and (a) may order intermediate sanctions without placing the defendant on probation, or (b) may place the defendant on probation with or without supervision and on the terms the court prescribes, including intermediate sanctions when practicable.

"Intermediate sanctions" include mental health treatment. *Id.* A stay of execution of a sentence may be revoked "[w]hen it

appears that the defendant has violated any of the conditions of probation or intermediate sanction" or has engaged in other misconduct. Minn.Stat. § 609.14, subd. 1 (1990). If the court finds grounds to revoke a sentence, it may "continue such stay and place defendant on probation or order intermediate sanctions * * * or order execution of the sentence previously imposed." Minn.Stat. § 609.14, subd. 3(2) (1990).

Traditionally, when a sentencing court revokes probation, it must do so only after completing a three-step analysis:

> [T]he court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation.

*Austin,* 295 N.W.2d at 250.

■ The rationale of *Austin* is not fully applicable in this case. The sentencing court revoked appellant's probation for reasons other than appellant's intentional violation of a condition of probation.[1] Recent case law is instructive on the question of whether revocation may rest upon nonintentional conduct of the probationer. In *State v. Thompson,* 486 N.W.2d 163, 165 (Minn.App.1992), this court held that the sentencing court did not abuse its discretion when it revoked probation, after the treatment program upon which probation was conditioned, ceased to exist. We stated:

> Appellant's probation was granted on condition that the [treatment] program be available. The sentencing court was within its discretion in revoking appellant's probation where the facilities contemplated in the sentencing alternative became unavailable. Any other rule

---

1. This court has found various instances where trial courts have not abused their discretion in revoking probation where probationers obstructed court-ordered sex offender treatment. In *State v. Hemmings,* 371 N.W.2d 44, 47 (Minn. App.1985), the court conditioned a stay of imposition of sentence upon defendant serving six months in jail and completing a sex offender treatment program. Defendant was unresponsive to the treatment and the program terminated him. *Id.* Defendant was also found by a second program to be unamenable to treatment.

*Id.* This court held that the trial court did not abuse its discretion in revoking probation. *Id.* In *State v. Rock,* 380 N.W.2d 211, 213 (Minn. App.1986), *pet. for rev. denied* (Minn. Mar. 27, 1986), this court held that the trial court did not abuse its discretion in revoking probation which had been conditioned upon successful completion of a sex offender treatment program. The court found probationer willfully violated the condition when he failed to be accepted into the program due to his unwillingness to work with the treatment program. *Id.*

might force sentencing judges to be unreasonably cautious in ordering probation, lest the probation plan fall through, as it did here.

*Id.*

As in *Thompson,* the sentencing court revoked appellant's probation because the intermediate sanction requiring inpatient treatment at Alpha ceased to be available or practicable to appellant. We conclude that the *Thompson* rationale addressing unavailability of treatment programs applies equally to this case.

In the absence of constitutional infirmity, the sentencing court did not abuse its discretion when it revoked appellant's probation. We therefore proceed to consideration of appellant's due process and equal protection arguments.

## B.

■ Appellant asserts that if he were wealthy or had other means to afford treatment, he would be receiving treatment at Alpha instead of serving a 34–month sentence in prison. He therefore argues that revocation of his probation violates the Due Process and Equal Protection Clauses of the United States and Minnesota Constitutions. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, §§ 2, 7. We discern no violation.

■ When conducting review under the Due Process Clause, this court must consider "whether and when it is fundamentally unfair or arbitrary for the State to revoke probation" when an indigent is unable to financially satisfy a condition of probation. *See Bearden v. Georgia,* 461 U.S. 660, 666, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221 (1983).

While no court has directly addressed due process in the specific context raised by appellant, United States Supreme Court decisions regarding the ability of indigent criminal defendants to pay fines do offer guidance. In *Bearden,* the defendant alleged that Georgia violated his due process and equal protection rights by revoking probation for failure to pay the imposed fine and restitution. *Id.* at 665, 103 S.Ct.

at 2069. The Court began its analysis by stating:

[T]o determine whether this differential treatment violates the Equal Protection Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation. This is substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine.

*Id.* at 665–66, 103 S.Ct. at 2069. A court must consider the "nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means of effectuating the purpose." *Williams v. Illinois,* 399 U.S. 235, 260, 90 S.Ct. 2018, 2031, 26 L.Ed.2d 586 (1970) (Harlan, J., concurring), *quoted in Bearden,* 461 U.S. at 666–67, 103 S.Ct. at 2069.

■ The state has a fundamental interest in appropriately punishing persons, both rich and poor, who violate criminal laws, and a "defendant's poverty in no way immunizes him from punishment." *Bearden,* 461 U.S. at 669, 103 S.Ct. at 2071. In summarizing its holding, the Court said:

[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interest in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do other-

wise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment. *Id.* at 672–73, 103 S.Ct. at 2073.

However, the Court stated that courts are not precluded from revoking probation where the probationer does not intentionally violate a term of probation. *Id.* at 668, 103 S.Ct. at 2070 n. 9. The Court also stated that "it must be remembered that the sentence was not imposed for a circumstance beyond the probationer's control 'but because he had committed a crime.'" *Id.* (quoting *Williams*, 399 U.S. at 242, 90 S.Ct. at 2022).

Notably, in *Bearden*, the Court observed that the initial decision to place the defendant on probation indicated that Georgia's penological interests did not require imprisonment. *Id.* at 670, 103 S.Ct. at 2071. However, the Court also observed that:

A probationer's failure to make reasonable efforts to repay his debt to society may indicate that this original determination needs reevaluation, and imprisonment may now be required to satisfy the State's interests.

*Id.*

There is a critical distinction between *Bearden* and this case. The sentencing court here did not state or even infer that Minnesota's penological interest did not require appellant's incarceration. The record before us indicates exactly the opposite. Application of the sentencing guidelines would have resulted in an executed sentence of 34 months. A guidelines sentence is presumed to be appropriate for the offense which resulted in conviction. Minn. Sent. Guidelines II.D. Certainly, Minnesota had a demonstrable interest in appropriately punishing appellant.

The sentencing court abandoned its initial consideration of imposing the guideline sentence, and granted appellant's request for dispositional departure. The sentencing court conditioned probation upon appel-

lant's successful completion of sex offender treatment at Alpha. Only after appellant's sentencing did Alpha's intake director state that the sentencing court should not assume that county funding would be available. The court's primary consideration in sentencing appellant to probation was the inpatient sex offender treatment which was later determined to be unavailable. A vital condition of appellant's probation has become impracticable.

■ Appellant has not "willfully refused to pay" or failed "to make sufficient bona fide efforts" to obtain the funds necessary to pay for treatment at Alpha. *See Bearden*, 461 U.S. at 672, 103 S.Ct. at 2073. Thus, consistent with *Bearden*, this court must consider whether alternative measures other than imprisonment are available to satisfy the state's penological interest. Neither party suggests feasible alternatives, and the sentencing court cited none.

Appellant's attempt to create an alternative to incarceration by obtaining funding for treatment from Carver County was unsuccessful, as was his challenge before the Commissioner of Human Services. The decisions of both the county and the Commissioner are supported by case law.

■ In *State v. Osterloh*, 275 N.W.2d 578, 579 (Minn.1978), the sentencing court conditioned defendant's probation upon his completion of a treatment program in a private institution with which the county had no contractual agreement. The Minnesota Supreme Court, in reversing the court's order that the county provide funding for the treatment, observed that the separation of powers doctrine does not provide the judiciary with inherent power to compel a county to pay for rehabilitative treatment of a defendant during probation. *Id.* at 580. The court found no statutory authority under which a court could compel such funding. *Id.* at 580–81. Similarly, we have found no authority, nor have we been cited to any, under which we would be authorized to compel Carver County to fund sex offender treatment for appellant.[2]

2. Minn.Stat. ch. 256E (1990), the Community Social Services Act, establishes a system of plan-

Equally as important, appellant does not have a constitutional right to receive sex offender treatment at county expense.

[A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status.

*Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975), *quoted in Rindahl v. St. Louis County Welfare Bd.*, 437 N.W.2d 686, 691 (Minn. App.1989). The Court has held that welfare benefits are not a fundamental right and "neither the State nor Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support." *Lavine v. Milne*, 424 U.S. 577, 584, 96 S.Ct. 1010, 1015 n. 9, 47 L.Ed.2d 249 (1976); *see also In re Estate of Turner*, 391 N.W.2d 767, 769 (Minn.1986) ("no person has a fundamental right to receive public assistance").

The sentencing court also properly rejected outpatient treatment as a feasible alternative to incarceration. The record demonstrates clearly that from the time it initially considered a dispositional departure, the sentencing court insisted that probation would be contingent upon appellant's pursuit of an inpatient treatment program.

We conclude that there are no alternative measures available to satisfy the state's interest in "punishment and deterrence." *Bearden*, 461 U.S. at 672, 103 S.Ct. at 2073. If the sentencing court is not permitted to execute appellant's sentence, he will incur only negligible consequences as a result of his plea of guilty to three counts of criminal sexual conduct involving three young girls.

Finally, while fundamental fairness does require that indigents be provided counsel on a first appeal, *Douglas v. California*, 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963), and that the state provide a free transcript of the preliminary hearing for an indigent's use at trial, *Mayer v. Chicago*, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971), courts have never found it to be fundamentally unfair that an indigent must receive sex offender treatment in prison rather than in the community.[3]

Thus, the court's revocation of appellant's probation was not arbitrary or fundamentally unfair and does not violate the Due Process Clause of the United States Constitution. Although this court is bound by the decisions of the United States Supreme Court when interpreting the Due Process Clause of the Fourteenth Amendment, when interpreting the Minnesota Constitution, "[w]e should exercise our own judicial judgment as to what we deem a violation of our own constitution." *State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 246, 265, 21 N.W.2d 792, 800 (1946), *quoted in State v. Oman*, 261 Minn. 10, 21, 110 N.W.2d 514, 522–23 (1961). However, the Minnesota Supreme Court has consis-

---

ning for and providing community social services administered by county boards under the supervision of the commissioner of human services. Minn.Stat. § 256E.02 (1990). "Community social services" are services to groups such as families with dependent, neglected, or abused children, vulnerable adults, and the elderly who cannot live independently. Minn.Stat. § 256E.03, subd. 2(a) (1990). The definition also includes services to "other groups of persons who, in the judgment of the county board, are in need of social services." Minn.Stat. § 256E.03, subd. 2(a)(9). Adult sex offenders are not identified by Carver County as a group in need of social services. Other counties have exercised their discretion to fund such treatment. The record indicates that Carver County's biennial community social services act plan was found by the Commissioner to fully comply with applicable Minnesota Statutes. *See* Minn. Stat. § 256E.09, subd. 3(7) (Supp.1991). The statute requires that county boards develop community social service plans with citizen participation. Minn.Stat. § 256E.09, subd. 2 (1990). Nothing in Minn.Stat. ch. 256E empowers a Minnesota court to compel the county to fund a program. We recognize that each county has limited resources and many worthy programs to fund.

3. In fact, this court has held that neither the federal constitution nor state law creates a liberty interest in rehabilitative programs in the Minnesota prison system. *See State ex. rel. McMaster v. Young*, 476 N.W.2d 670, 672 (Minn. App.1991), *pet. for rev. denied* (Minn. Dec. 13, 1991). The rationale of *McMaster* applies with equal validity to any liberty interest appellant claims in receiving such treatment as a condition of probation.

tently declared that the due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the federal constitution. *E.g., Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988). Therefore, we similarly conclude that the revocation did not violate the Due Process Clause of the Minnesota Constitution.

### C.

Appellant also challenges the revocation of his probation on equal protection grounds. He contends that the state has no basis for distinguishing between the wealthy and the poor when determining sentences and, therefore, the sentencing court unconstitutionally classified him based upon his indigent status. We find no violation of appellant's equal protection rights.

We note initially that in cases involving an indigent defendant, analyses of constitutional challenges framed under either the Due Process or Equal Protection Clauses of the United States or Minnesota Constitutions raise similar questions. *See Bearden*, 461 U.S. at 666–67, 103 S.Ct. at 2069. A due process approach has advantages over an equal protection analysis for resolving the "intertwined question of the role that a defendant's financial background can play in determining an appropriate sentence." *Id.* at 666, 103 S.Ct. at 2069 n. 8.[4] The *Bearden* court stated:

> When the court is initially considering what sentence to impose, a defendant's

level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting "the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished," *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S. Ct. 2072, 2079 [23 L.Ed.2d 656] (1969). The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.

*Id.*

*Bearden* shifted the Court's analytical focus from equal protection to due process. Due process appears to be the more appropriate analysis to test the constitutionality of sentencing methods.[5] Other courts have adopted the position that an equal protection analysis is unsatisfactory in evaluating the constitutionality of sentencing decisions.[6] As Justice Harlan cautioned in his concurring opinion in *Williams:*

> [equal protection] would require that the consequence of punishment be comparable for all individuals; the State would be forced to embark on the impossible task of developing a system of individualized fines, so that the total disutility of the entire fine, or the marginal disutility of the last dollar taken would be the same for all individuals.

*Id.* 461 U.S. at 261, 90 S.Ct. at 2032 (Harlan, J. concurring).

---

**4.** Prior to the decision in *Bearden*, the Court routinely applied equal protection principles to governmental actions which discriminate against individuals in the criminal justice system. In applying an equal protection analysis to the sentencing statute in *Williams*, the Court stated that the federal equal protection clause prohibits states from imprisoning for a period longer than the statutory maximum a defendant who is financially unable to pay a fine. 399 U.S. at 243, 90 S.Ct. at 2023. However, the Court also held that the equal protection clause of the federal constitution permits "qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." *Id.* The Court stated:

> [t]he mere fact that an indigent in a particular case may be imprisoned for a longer time

than a non-indigent convicted of the same offense does not * * * give rise to a violation of the Equal Protection Clause.

*Id.*

**5.** After *Bearden*, the Court has applied the due process analysis to sentencing procedures and has held that due process does not require that a sentencing judge explain on the record the consideration and rejection of alternatives to incarceration when revoking probation, where sufficient evidence exists to justify revocation. *See, e.g., Black v. Romano*, 471 U.S. 606, 616, 105 S.Ct. 2254, 2260, 85 L.Ed.2d 636 (1985).

**6.** *See, e.g., Montana v. Farrell*, 207 Mont. 483, 676 P.2d 168, 176 (1984).

■ In this case, although the court evaluated appellant's ability to pay for treatment at Alpha, the court did not "classify" appellant when it revoked his probation. The consideration of appellant's financial background in determining an appropriate sentence is a point on a spectrum not a classification. *Bearden,* 461 U.S. at 666, 103 S.Ct. at 2069 n. 8. To hold that a court "classifies" an individual when it considers indigent status in determining a sentence or deciding to revoke probation would implicate equal protection at every turn.

Because the court's consideration of appellant's indigent status when it revoked his probation did not violate due process, under *Bearden,* the court's differential treatment of appellant also does not violate the federal Equal Protection Clause. *Id.* 461 U.S. at 666, 103 S.Ct. at 2069. At least one court has presumed that the result in *Bearden* would have been identical whether analyzed under the Due Process or Equal Protection Clause. *See Lemieux v. Kerby,* 931 F.2d 1391, 1393 n. 4 (10th Cir. 1991). We, too, reach a result under an equal protection analysis that is identical to the result reached under due process. Revocation of appellant's probation does not violate his equal protection rights under the United States Constitution.

■ We likewise discern no violation of the equal protection guarantee of the Minnesota Constitution where the court's revocation of appellant's probation was not arbitrary or fundamentally unfair. Appellant was not accorded different treatment on the basis of race, alienage or membership in a distinct minority. Therefore, if we were to conduct a traditional equal protection analysis under the Minnesota Constitution, our standard of review would utilize the "rational basis" test. *See State v.*

*Little,* 423 N.W.2d 722, 725 (Minn.App. 1988), *pet. for rev. denied* (Minn. July 6, 1988). The Minnesota rational basis standard requires:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation * * * (2) the classification must be genuine or relevant to the purpose of the law * * * and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Wegan v. Village of Lexington,* 309 N.W.2d 273, 280 (Minn.1981), *quoted in State v. Russell,* 477 N.W.2d 886, 888 (Minn.1991).

There is a substantial obstacle which prevents an adequate analysis of appellant's equal protection challenge. Such challenges are most typically brought in connection with statutes, ordinances, or administrative rules that are facially discriminatory, or brought in cases where the application of a facially neutral enactment discriminates against a particular class of individuals.[7] As commentators have stated:

> Equal protection tests whether the classification is properly drawn. * * * Equal protection deals with legislative line drawing.

3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law,* § 18.2, at 7–88 (2d ed. 1992).

Appellant has not challenged any legislative enactment. He complains about neither Minn.Stat. § 609.343, subd. 1(a) (criminal sexual conduct in the second degree) nor the sentencing guidelines as discriminating on the basis of his indigent status.

7. In *Town of Ball v. Rapides Parish Police Jury,* 746 F.2d 1049, 1056–57 n. 25 (5th Cir.1984), the court stated:

Although most classifications are legislative, equal protection also applies to non-legislative state action. *See Moose Lodge v. Irvis,* 407 U.S. 163, 179, 92 S.Ct. 1965, 1974 [32 L.Ed.2d 627] (1972) ("State action, for purposes of the Equal Protection Clause, may emanate from rulings of administration and regulatory agencies as well as from legislative or judicial

action."); *see also Shelly v. Kraemer,* 334 U.S. 1, 14, 68 S.Ct. 836, 842 [92 L.Ed. 1161] (1948) (judicial action); *Yick Wo v. Hopkins,* 118 U.S. 356, 373, 6 S.Ct. 1064, 1072 [30 L.Ed. 220] (1886) (administrative action).

*See also Doe v. McFaul,* 599 F.Supp. 1421, 1429 n. 5 (E.D.Ohio 1984) ("An elemental prerequisite for equal protection analysis is that there be some legislation or administrative scheme or state-promulgated rules which are subject to judicial review." (citations omitted)).

Thus, we encounter the same difficulty as the *Bearden* court did when we attempt to fashion an equal protection analysis under the Minnesota Constitution to address a challenge that involves no statutory enactment. *See Bearden,* 461 U.S. at 666, 103 S.Ct. at 2069 n. 8.

Ultimately, we analytically reach the same conclusion under the Minnesota Constitution as we reached under analysis pursuant to the United States Constitution. Revocation of appellant's probation did not violate his equal protection right under the Minnesota Constitution. The state has a rational basis for distinguishing between appellant and a person who could have paid for treatment at Alpha. The state does not have measures other than imprisonment by which to hold appellant accountable for the serious offenses he committed. The distinction between appellant and a nonindigent person is not a fanciful or arbitrary one. The state's penal interests, which are strongly implicated here, are both genuine and substantial. The distinction is necessary in order to serve those legitimate interests.

Revocation of probation involves a serious loss. *State v. Belfry,* 431 N.W.2d 572, 573 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). We recognize that appellant has an interest in conditional freedom, *see Austin,* 295 N.W.2d at 250, and that the sentencing court's decision to revoke probation deprived appellant of this freedom. However, appellant's loss of conditional freedom under the facts of this case does not rise to the level of a violation of a constitutionally protected right. While this court is not insensitive to appellant's situation, we conclude that the difficult decision which the sentencing court was called upon to make is fully supported by the law.

## II.

■ Appellant has moved to strike a portion of respondent's appendix pursuant to Minn.R.Civ.App.P. 110.01. The record on appeal consists of the "papers filed in the trial court, the exhibits, and the transcript of proceedings." *Id.; see Kise v. Product Design & Eng'g, Inc.,* 453 N.W.2d 561, 566 (Minn.App.1990). "An appellate court cannot base its decision on matters outside the record on appeal and any matters not part of the record must be stricken." *Mitterhauser v. Mitterhauser,* 399 N.W.2d 664, 667 (Minn.App.1987).

■ The challenged document is an April 30, 1992, letter from a Carver County judge to attorneys for the county and appellant. Appellant argues that the letter was not offered as an exhibit or filed with the court. We disagree. The letter was filed in the court on May 1, 1992. The sentencing court not only had the contents of that letter before it; the sentencing court authored the letter. Most important, it is clear that the sentencing court's decision to lift the stay of execution of sentence was influenced by the availability of a prison treatment program for sex offenders.

The letter is part of the record on appeal. Minn.R.Civ.App.P. 110.01. Appellant's motion to strike is denied.

## DECISION

The sentencing court did not abuse its discretion or violate appellant's due process and equal protection rights when it revoked appellant's probation and executed the prison sentence.

Affirmed.