*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0557**

State of Minnesota,
Respondent,

vs.

Thomas Henry Bundy,
Appellant.

**Filed December 22, 2014
Affirmed
Kirk, Judge**

Dakota County District Court
File No. 19HA-CR-11-2328

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this appeal following the revocation of his probation, appellant Thomas Henry Bundy argues that the district court abused its discretion in finding that the need for

confinement outweighed the policies favoring probation because it failed to consider an inpatient treatment program as an alternative to revocation. We affirm.

## FACTS

In July 2011, respondent State of Minnesota charged appellant with first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(g) (2010). In June 2012, appellant pleaded guilty to the charged offense and requested a downward-dispositional sentencing departure. Before his plea, appellant had started sex-offender treatment at Project Pathfinder. Appellant's therapist stated that he was cooperative and "continues to present as appropriate for outpatient sexual offender treatment." The district court found that appellant was amenable to probation and treatment and departed from the sentencing guidelines, staying execution of the 144-month sentence, sentencing appellant to one year in jail, and placing him on probation for 20 years. As a condition of his probation, the district court ordered appellant to continue attending sex-offender treatment.

On August 14, 2012, Project Pathfinder terminated appellant from outpatient treatment due to behavior in jail that it believed warranted residential treatment. Appellant's probation officer then alleged that appellant had violated probation by failing to attend sex-offender treatment at Project Pathfinder and requested vacation of the stay of execution. Following a hearing, the district court concluded that the state "failed to show by clear and convincing evidence a [probation] violation." But the district court added conditions to appellant's probation. For example, appellant was required to complete a re-intake process at Project Pathfinder or another treatment program, to

2

abstain from nonconsensual or public sexual activity, and to reside at Union Gospel Mission.

After his release from jail, appellant started the re-intake process for outpatient treatment at Project Pathfinder. According to appellant's counselor, appellant "presented as angry or hostile [but] his affective range was within normal limits." Project Pathfinder considered appellant "marginally appropriate" for treatment because he had "struggled with maintaining prosocial and appropriate self-management in the community setting." Nevertheless, Project Pathfinder admitted appellant into the program for a 90-day probationary period, during which he was required to comply with all expectations, including polygraph testing.

Appellant took a polygraph in August 2013 to determine whether he was following the rules of treatment and probation. Project Pathfinder also sought to "further clarify the behavior that had occurred while [appellant was] in custody." Before beginning the polygraph, the examiner provided a preliminary questionnaire to appellant regarding "the timeframe since he began [his current] treatment." In this questionnaire, appellant admitted to sexual contact with two people during this timeframe in a car and outdoors, and he admitted being alone with children.

On September 25, Project Pathfinder again discharged appellant from outpatient treatment. Project Pathfinder concluded that appellant "was not amenable to outpatient treatment services" because he had failed "to make goal progress in a timely fashion" and had disclosed rule violations and "concerning behaviors" during his polygraph. Project Pathfinder recommended that appellant receive inpatient or secured treatment.

According to appellant's therapist, the only available inpatient program was Alpha Human Services.

Appellant's probation officer then filed a new probation-violation report, alleging that appellant (1) had not cooperated with the re-intake process at Project Pathfinder because he was again discharged from the program and found to be withholding information during treatment sessions; (2) had contact with minors that he disclosed only as he was about to take a polygraph examination; (3) had sexually touched a nonconsenting adult; (4) had engaged in grooming behavior toward this adult; and (5) had failed to report to the address approved by probation. Appellant's probation officer requested execution of appellant's sentence for his "violation of multiple conditions of his probation."

At the probation-violation hearing, appellant's probation officer testified that appellant was not amenable to probation because he was "unable to abide by th[e] simple conditions" of his probation. He recommended executing appellant's sentence and stated that alternatives were not "feasible given [his] situation." The probation officer had looked into Alpha Human Services, but explained that the program is "highly expensive" and that Dakota County had paid for only one person to attend a residential program a decade earlier. Besides the cost, the probation officer expressed concern with Alpha because it is not secure and appellant could leave at any time.

Appellant testified that he understood the conditions of his probation, including that he was not to have sexual contact with anyone other than his wife and that he was to live at Union Gospel Mission. Appellant admitted that he had sexual contact with two

4

men and that he did not immediately report to Union Gospel Mission. In addition, appellant stated that he understood he was prohibited from having contact with minors, but had hugged two minors and was briefly in a home alone with two minors. Appellant stated that he was willing to cooperate with a treatment program.

The district court found that appellant had violated conditions of his probation, stating:

> I'm making [*Austin*] findings that the act of what I call grooming the 18-year old in the car in the St. Paul parking lot was a violation of my conditions of probation. I specifically told you no grooming, no touching. . . . After [the previous] hearing, I was very clear as to what you could and could not do. And to find yourself . . . in a car, with an 18-year old who may or may not be vulnerable—we know that person is homeless apparently—in a public parking lot was a clear and distinct violation of my order.
> You were to report to the Gospel Mission. You didn't do that right away. . . . I wouldn't put you in prison for that violation but it's just a totality of the circumstances.

The district court concluded that appellant could not control himself and that his sexual touching of the 18-year-old was both intentional and inexcusable. In addition, the district court stated that "all the [*Austin*] factors are there" and that appellant's sexual impulses and actions were serious and likely to "occur again if he wasn't placed in prison." The district court "agree[d] with [probation] that the only safe way for society to make sure that we don't have somebody else who is hurt is to place [appellant] in prison." As a result, the district court executed appellant's 144-month sentence. This appeal follows.

5

## D E C I S I O N

When a probationer violates a condition of probation, the district court may continue probation, impose intermediate sanctions, or revoke probation and impose the stayed sentence. Minn. Stat. § 609.14, subd. 3(2) (2012). Before revoking probation, the district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). We review the district court's decision that sufficient evidence exists to revoke probation for an abuse of discretion. *Id.* at 249-50.

The district court found that appellant had violated conditions of his probation and that the violations were intentional and inexcusable. Appellant does not challenge these findings on appeal. Appellant only challenges the third *Austin* finding.

When finding that the need for confinement outweighs the policies favoring probation, the district court must find the presence of at least one of three policy factors: (1) "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "the offender is in need of correctional treatment which can most effectively be provided if he is confined"; or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quotations omitted).

The district court did not specifically state that the need for confinement outweighed the policies favoring probation. *See Austin*, 295 N.W.2d at 250. But the district court did state that confinement was necessary to protect the public and that

6

appellant was likely to reoffend if he was not sent to prison. The district court therefore considered the first policy factor. *See Modtland*, 695 N.W.2d at 607.

The record supports the district court's conclusion that confinement was necessary to protect the public from appellant's further criminal activity. *See id.* Appellant's presumptive sentence for first-degree criminal sexual conduct was 144 months in prison. *See* Minn. Sent. Guidelines 4.B (2010) (listing the presumptive 144-month sentence for a criminal defendant with zero criminal history points). But the district court departed from the sentencing guidelines and sentenced appellant to one year in jail and 20 years on probation. When doing so, the district court emphasized that, if appellant violated the terms of his probation, he could be sent to prison for 144 months. As is often the case when pronouncing a downward-dispositional departure under the sentencing guidelines, the district court cautioned appellant to "take advantage of this opportunity" and to strictly follow the terms of his probation. But instead of taking advantage of his opportunity, appellant violated multiple terms of his probation. Appellant's sexual and grooming behavior continued even as he was receiving outpatient treatment, and public safety was put at risk.

Public safety is implicated whenever a criminal defendant violates probation after receiving a downward-dispositional departure on a crime that involves a presumptive prison sentence. In addition, when a criminal defendant receives a downward-dispositional departure and violates multiple terms of his probation, "it would unduly depreciate the seriousness of the violation if probation were not revoked." *See Modtland*, 695 N.W.2d at 607. A district court has greater discretion when considering whether to

7

revoke a criminal defendant's probation after ordering a downward-dispositional departure because, under the third *Austin* factor, the need for confinement has already been determined by the Sentencing Guidelines Commission to outweigh the policies favoring probation in the typical case. And the fact of appellant's violation of probation after a dispositional departure strongly suggests that appellant falls within the range of typical cases despite the earlier departure.

But appellant argues that the third *Austin* factor is not met when a probationer could be sent to residential treatment rather than prison. Appellant states that the district court "failed to address whether residential treatment would not have been a better and acceptable alternative to incarceration." But the policy factors do not require consideration of all alternatives or whether residential treatment is more or less appropriate than prison. *See id.* The district court was not required to make a specific finding that appellant did not qualify for residential treatment. The district court only had to find that appellant intentionally violated his probation and that the need for confinement outweighed the policies favoring probation. *See Austin*, 295 N.W.2d at 250. Because the district court made these findings, it did not abuse its discretion in revoking appellant's probation rather than sending him to residential treatment.

In *State v. Morrow*, the district court granted a dispositional departure and placed the appellant on probation on condition that he enter and complete inpatient treatment at Alpha. 492 N.W.2d 539, 542 (Minn. App. 1992). But the county refused to pay for this expensive treatment and the appellant could not afford it. *Id.* As a result, the district court sent the appellant to prison. *Id.* This court determined that the district court did not

abuse its discretion by revoking the appellant's probation because "the intermediate sanction requiring inpatient treatment at Alpha ceased to be available or practicable." *Id.* at 544.

Appellant argues that, unlike in *Morrow*, inpatient treatment at Alpha was available to him if the county would pay for it. But the county was not required to fund appellant's inpatient treatment at Alpha. *See id.* at 545-46. And probation did not recommend Alpha both because of its cost and because appellant would be free to leave its unsecured facility. The district court was not required to discuss Alpha or other alternatives to imprisonment; it only needed to find that the need for confinement outweighed the policies favoring probation. *See Austin*, 295 N.W.2d at 250. In addition, the record contains no evidence that Alpha is an available or appropriate alternative to prison.

The district court did not abuse its discretion in revoking appellant's probation because confinement was necessary to protect the public from appellant's criminal behavior. *See Modtland*, 695 N.W.2d at 607.

**Affirmed.**