STATE of Minnesota, Respondent,

v.

Stephanie Dawn LOSH, Appellant.

No. A04–1028.

Court of Appeals of Minnesota.

April 5, 2005.

Earl E. Maus, Cass County Attorney, Walker, MN; and Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN, for respondent.

Bradford W. Colbert, L.A.M.P., Kristin Hubred (certified student attorney), St. Paul, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; GORDON SHUMAKER, Judge; and DIETZEN, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant challenges (1) the validity of the upward durational departure of her sentence under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and (2) the revocation of her probation and execution of her sentence. Because we hold that *Blakely* does not apply retroactively to a pending probation-revocation appeal after the time to file a direct appeal from the final judgment has expired, we affirm appellant's sentence. And because the district court did not abuse its discretion by revoking appellant's probation, we affirm the execution of her sentence.

### FACTS

Appellant Stephanie Losh was involved in an incident in which two of her friends beat an individual who later died from his injuries. Losh was indicted by a grand jury for second-degree murder and pleaded guilty to aiding and abetting kidnapping under a plea agreement. At the August 18, 2003, sentencing hearing, both parties made arguments regarding the possibility of a dispositional departure but not a durational departure.

The district court sentenced Losh to 120 months in prison. This upward durational departure from the presumptive 86 months was based on the aggravating factor of the

victim's vulnerability. The court then dispositionally departed from the sentence by staying execution, ordering Losh to serve one year in jail with Huber privileges for school and chemical dependency treatment, and placing her on probation for 40 years. The conditions of probation included refraining from use of mood-altering substances and submitting to random drug testing.

While serving her jail time, Losh attended classes at Northwest Technical College. Nine days before her sentence expired, Losh returned to jail from school and reported that she did not feel well. When a corrections officer asked if Losh had taken anything for her illness, she reported that she had taken a pill from her aunt, who also attended classes at the college, but did not know what the pill was. Losh was then given a urinalysis test which tested positive for morphine.

At the March 8, 2004 probation violation hearing, Losh testified that she had asked her aunt for a Tylenol. Her aunt did not have a Tylenol but gave Losh a pill that Losh thought was a Motrin. Losh claimed that, when she later called her mother from the college and reported that she did not feel well, she realized that the pill her aunt had mistakenly given her was a hydrocodone, which her aunt had been prescribed for a previous miscarriage. Losh testified that she did not intentionally violate her probation and that ingesting the hydrocodone, containing morphine, was accidental.

The district court revoked Losh's probation, telling her, "Your attorney argues forcibly for you that this was not an intentional act, but I do not find that to be

credible." The district court then executed Losh's 120–month prison sentence. Losh challenges the constitutional validity of the upward durational departure of her prison sentence under *Blakely* and the revocation of the stay of execution.

## ISSUES

I. Does *Blakely* apply retroactively to a defendant's pending probation-revocation appeal taken after the time to file a direct appeal from the final judgment has expired?

II. Did the district court abuse its discretion in revoking Losh's probation and executing her sentence?

## ANALYSIS

### I.

▉▉▉▉ Losh argues that the upward durational departure of her sentence based on the district court's finding of the "vulnerability of the victim" aggravating factor violates her jury-trial rights under *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[1] Losh was sentenced on September 18, 2003. Her time to file a direct appeal of the final judgment elapsed 90 days from that date. *See* Minn. R.Crim. P. 28.02, subd. 4(3). Losh did not directly appeal the final judgment. However, she appealed from the March 8, 2004, revocation of her probation on June 7, 2004. *Blakely* was decided on June 24, 2004, while that probation-revocation appeal was pending.

Blakely applies retroactively to matters pending on direct appeal when it was announced. *See O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004) (new rules of

---

**1.** We address this issue although the state agrees with Losh that *Blakely* applies. "[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be 'diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities.'" *State v. Hannuksela,* 452 N.W.2d 668, 673 n. 7 (Minn.1990).

federal constitutional procedure apply to matters pending on direct review when the rule is announced). The United States Supreme Court has stated that "we fulfill our judicial responsibility by instructing the lower courts to apply the new rule [of criminal constitutional procedure] retroactively to cases not yet final." *Griffith v. Kentucky,* 479 U.S. 314, 323, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). The retroactivity analysis for convictions that have become final is different from the analysis for convictions that are not final at the time the new rule is announced. *Id.* at 321–22, 107 S.Ct. at 712. The application of new rules to pending matters protects the integrity of judicial review by avoiding inequities between treatment of similarly situated defendants. *Id.* at 323, 107 S.Ct. at 713; *see State v. Lewis,* 656 N.W.2d 535, 538 (Minn.2003) ("[T]o apply a new rule to the case in which it was announced but to not apply it to other cases that were then on direct appeal 'would be to treat similarly situated criminal defendants differently.' ") (citation omitted).

Thus, the point at which a judgment becomes final is the critical point for purposes of retroactivity analysis. Protecting the integrity of judicial review does not require extending a new rule of criminal constitutional procedure to a differently situated class, namely those defendants whose convictions have become final. Further, extending the new rule to those challenging the revocation of their probation would treat differently those with stayed sentences from those with executed sentences.[2]

Accordingly, because *Blakely* was released after the period to file a direct appeal from Losh's conviction was final, we conclude that *Blakely* does not apply to Losh's pending probation-revocation appeal.

## II.

 Losh also argues that because her probation violation was unintentional, the district court erred by executing her sentence. On review of a probation revocation, this court will reverse the decision only if the district court clearly abused its discretion. *State v. Austin,* 295 N.W.2d 246, 249–50 (Minn.1980). The state must prove a probation violation by clear and convincing evidence. Minn. R.Crim. P. 27.04, subd. 3. When revoking probation, a district court must use the following three-part test: "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that [the] need for confinement outweighs the policies favoring probation." *Austin,* 295 N.W.2d at 250.

The district court failed to expressly follow the *Austin* test when it revoked Losh's probation. While we prefer that the district court articulate specific findings on each of the *Austin* factors, specific findings are not mandatory to support a probation-revocation if the decision is supported by sufficient evidence in the record. *State v. Hamilton,* 646 N.W.2d 915, 918 (Minn.App.2002), *review denied* (Minn. Sept. 25, 2002). To support the first *Aus-*

---

**2.** We note that the retroactivity analysis of *Griffith* focuses on when the conviction becomes final, not when the sentence may no longer be modified. In Minnesota, a sentence may be modified at any time. Minn. R.Crim. P. 27.03, subd. 9; *see also State v. Hockensmith,* 417 N.W.2d 630, 632 (Minn.1988) (allowing a defendant to challenge an upward durational departure at a probation-revocation hearing); *State v. Fields,* 416 N.W.2d 734, 736 (Minn.1987) (same). But the fact that modification of a sentence is possible does not mean a judgment is not final for the purpose of precluding the retroactive application of a new rule.

*tin* factor, Losh does not dispute that she violated a condition of her probation by taking a hydrocodone pill. But Losh argues that because she mistakenly took the pill believing it to be a form of aspirin, the violation was not intentional or inexcusable to support the second *Austin* factor.

At the probation revocation hearing, Losh testified that she was suffering from a headache on the day of the incident; she asked her aunt, a classmate, for a Tylenol; and she took from her aunt what Losh thought was a Motrin, another form of aspirin. Losh explained that only later, when she became ill and spoke with her mother, did she realize that her aunt had mistakenly given her a hydrocodone pill. The district court found Losh's account of these events not to be credible: Losh's claim that her aunt did not tell her what was in the pill did not comport with the fact that she knew what she might have taken once she returned to the jail. And the district court discounted Losh's claim that a call to her mother triggered her memory that her aunt may have had hydrocodone pills prescribed following a miscarriage. Because the district court's role is to judge the credibility of the witnesses, we defer to the district court's credibility evaluations. *See State v. Moot,* 398 N.W.2d 21, 23 (Minn.App.1986) (district court acts as factfinder by weighing witness credibility), *review denied* (Minn. Feb. 13, 1987); *State v. Spanyard,* 358 N.W.2d 125, 127 (Minn.App.1984) (citing *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980) (deferring to district court's evaluation of witness credibility when district court did not believe defendant's explanations)), *review denied* (Minn. Feb. 27, 1985).

To support the third *Austin* factor, the district court must find that the need for confinement outweighs the policies in favor of probation. Without referencing the third *Austin* factor expressly, the district court stated that:

> This entire incident was the result of the abuse of drugs and alcohol and poor choices. [T]o allow you to again use or be involved with people who use chemicals in violation of the conditions of probation would not serve the public interest. This crime was the most vicious thing that I've ever seen and you were a part of it. And I realistically should have sent you to prison before, but I wanted to give you the opportunity to make a success of yourself.

Thus, the district court found that Losh's continued use and involvement with controlled substances is a danger to the public interest. This finding adequately supports the third *Austin* factor. Because the *Austin* test is satisfied, the district court did not abuse its discretion by revoking the stay and executing Losh's sentence.

## DECISION

Because *Blakely* does not apply retroactively to a probation-revocation appeal, and the district court did not abuse its discretion by revoking Losh's probation, we affirm the execution of Losh's sentence.

**Affirmed.**