**STATE of Minnesota, Respondent,**

v.

**Stephanie Dawn LOSH, Appellant.**

No. A04–1028.

Supreme Court of Minnesota.

Sept. 28, 2006.

Bradford Colbert, St. Paul, MN, for Appellant.

Mike Hatch, Attorney General, Thomas Rogatz, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN, Earl Maus, Cass County Attorney, Walker, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Stephanie Dawn Losh was indicted for second-degree murder, Minn.Stat. § 609.19, subd. 2(1) (2004), for her actions in connection with the death of Brian Jenny. She pleaded guilty to kidnapping, Minn.Stat. § 609.25, subd. 2(2) (2004). At sentencing, the district court departed durationally and dispositionally, imposing a 120–month stayed sentence. On March 8, 2004, the district court found Losh to be in violation of the terms of her probation and executed her sentence. Losh appealed. The court of appeals affirmed Losh's sentence and the execution of her sentence. State v. Losh, 694 N.W.2d 98, 99 (Minn. App.2005). We granted Losh's petition for further review and, after hearing oral argument, we ordered the parties to file supplemental briefs addressing whether this court has jurisdiction to entertain Losh's appeal in light of Minn.Stat. § 244.11, subd. 3 (2004). We hold that section 244.11, subdivision 3, violates the separation of powers under the Minnesota Constitution by encroaching on this court's appellate jurisdiction and this court's inherent authority over matters of appellate procedure. Addressing Losh's sentencing appeal on the merits, we conclude that Losh is not entitled to the retroactive effect of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in this case and that the district court did not abuse its discretion in imposing an upward durational departure. Therefore, we affirm.

In early October 2002, Brian Jenny and his brother-in-law, David Matzke, were staying in a cabin in Federal Dam, Minnesota. After drinking beer at a local bar, Jenny and Matzke invited the bartender to join them at the cabin later that night. Sometime after 1:00 a.m., Losh, Kenneth Conger, Leaha Harper–Jenkins, and several other individuals arrived at the cabin. At some time after that, Jenny and Conger left to get more beer and Jenkins eventually joined them.

Jenkins later returned to the cabin and asked Losh for a ride. Losh drove Jenkins to a location where Losh observed Conger hitting a person (whom Losh later learned was Jenny) with a baseball bat. Losh and Jenkins returned to the cabin, and after leaving the cabin once again, they noticed Conger by the side of the road. Conger joined them in the vehicle and instructed Losh to drive to the location where he had left Jenny. Conger and Jenkins placed Jenny in the back of the car. Losh stated that she did not look at Jenny when Jenkins and Conger placed him in the car and that Jenny was not saying anything. Jenkins and Conger told Losh to drive "toward Sugar Point or * * * Peter's Pond Road" and told Losh to stop "by the pond or the bog." After Losh stopped, Jenkins and Conger took Jenny out of the vehicle and placed him by the side of the road—Losh stated that she did not help move Jenny. Losh then drove Jenkins and Conger to Sugar Point. Days later, Jenny died from blunt force trauma to the head.

Losh was indicted for second-degree felony murder; the underlying felony was kidnapping. Losh reached a plea agreement with the state, and the district court accepted Losh's plea of guilty to kidnapping involving unsafe release and great bodily harm, Minn.Stat. § 609.25, subd. 2(2). This is a severity level nine offense with a presumptive sentence of imprisonment for 86 months.[1] Minn. Sent. Guidelines IV, V. On August 18, 2003, the district court sentenced Losh to a 120-month term of imprisonment. The district court stayed the execution of this sentence. Losh's sentence, therefore, was an upward durational departure and downward dispositional departure. At the sentencing hearing, the district court stated that the upward durational departure was based on the vulnerability of the victim. Losh was placed on probation—conditions included serving 365 days in jail, abstaining from mood-altering substances, and submitting to random drug testing.

On March 8, 2004, the district court found that Losh had violated the terms of her probation, namely by ingesting a pill containing a narcotic. The district court executed her 120-month sentence. Losh appealed to the court of appeals, and while her appeal was pending, the Supreme Court decided *Blakely*. The court of appeals affirmed the district court, holding that *Blakely* did not apply retroactively to Losh's sentence because *Blakely* was decided after the time to file a direct appeal from the judgment had expired. *Losh*, 694 N.W.2d at 99. We granted review, and before this court, Losh challenges her sentence on two grounds: (1) that her sentence violates *Blakely*, a rule to which Losh claims she is entitled, and (2) that the district court abused its discretion in imposing an upward durational departure. After hearing argument, we ordered the parties to file supplemental briefs addressing the question of whether we have jurisdiction to entertain Losh's appeal in light of Minn.Stat. § 244.11, subd. 3. We first address the jurisdictional issue and then Losh's sentencing challenges.

### I.

The threshold issue of this case is whether Losh's appeal is time-barred by section 244.11, subd. 3.[2] If the appeal is

---

1. The plea agreement between Losh and the state did not involve a joint sentencing recommendation to the district court or other sentencing agreement.

2. The applicability and constitutionality of section 244.11, subd. 3, was not initially briefed or argued by the parties. Additional briefing and argument concerning this issue was ordered by this court.

time-barred, then this court appears to be without jurisdiction to entertain this appeal. *See Ford v. State*, 690 N.W.2d 706, 709 (Minn.2005) ("[T]ime requirements for the filing of an appeal are jurisdictional.").[3] The state argues, and Losh does not contest, that section 244.11, subd. 3, applies to Losh's appeal and that Losh did not meet the time requirements set out by the statute. The statutory text provides:

(a) As used in this subdivision, "appeal" means:

(1) an appeal of a sentence under rule 28 of the Rules of Criminal Procedure; and

(2) an appeal from a denial of a sentence modification motion brought under Rule 27.03, subdivision 9,[4] of the Rules of Criminal Procedure.

(b) If a defendant agrees to a plea agreement and is given a stayed sentence, which is a dispositional departure from the presumptive sentence under the Minnesota Sentencing Guidelines, the defendant may appeal the sentence only if the appeal is taken:

(1) within 90 days of the date sentence was pronounced; or

(2) before the date of any act committed by the defendant resulting in revocation of the stay of sentence; whichever occurs first.

(c) A defendant who is subject to paragraph (b) who has failed to appeal as provided in that paragraph may not file a petition for postconviction relief under chapter 590 regarding the sentence.

(d) Nothing in this subdivision shall be construed to:

(1) alter the time period provided for the state to appeal a sentence under Rule 28 of the Rules of Criminal Procedure; or

(2) affect the court's authority to correct errors under Rule 27.03, subdivision 8,[5] of the Rules of Criminal Procedure.

Minn.Stat. § 244.11, subd. 3 (footnotes added).

Because Losh entered a plea agreement with the state, was given a stayed sentence which was a dispositional departure, and appealed pursuant to Minn. R.Crim. P. 27.03, subd. 9 as interpreted by this court in *State v. Fields*, 416 N.W.2d 734 (Minn. 1987), the statute applied to her appeal. Because Losh did not violate the terms and conditions of her probation until more than 90 days after the date her sentence was pronounced, under section 244.11, subd. 3, Losh had 90 days after pronouncement of sentence to appeal her sentence. She did not meet that time restriction, and consequently, under the plain language of section 244.11, subd. 3, her appeal is time-barred.

 Losh does not argue that her appeal falls outside the scope of section 244.11, subd. 3, or that she has met the statute's requirements. Her principal ar-

---

3. But, "this court has 'inherent authority to [accept] an appeal in the interests of justice even when the filing or service requirements set forth in a rule or statute have not been met.'" *State v. Barrett*, 694 N.W.2d 783, 788 n. 4 (Minn.2005) (alteration in original) (quoting *In re Welfare of J.R.*, 655 N.W.2d 1, 3 (Minn.2003)).

4. "The court at any time may correct a sentence not authorized by law. The court may at any time modify a sentence during either a stay of imposition or stay of execution of sentence except that the court may not increase the period of confinement." Minn. R.Crim. P. 27.03, subd. 9.

5. "Clerical mistakes in judgments, orders, or other parts of the record or errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." Minn. R.Crim. P. 27.03, subd. 8.

gument is that section 244.11, subd. 3, is unconstitutional because it violates the separation of powers under the Minnesota Constitution.[6] We review the constitutionality of a statute de novo. *Deegan v. State*, 711 N.W.2d 89, 92 (Minn.2006). "[D]ue respect for coequal branches of government requires this court to exercise great restraint in considering the constitutionality of statutes particularly when the consideration involves what is a legislative function and what is a judicial function." *State v. Johnson*, 514 N.W.2d 551, 554 (Minn.1994). This due respect notwithstanding, "courts have the power to 'determine what is judicial and what is legislative; and if it is a judicial function that the legislative act purports to exercise, [this court] must not hesitate to preserve what is essentially a judicial function.'" *State v. McCoy*, 682 N.W.2d 153, 160 n. 7 (Minn. 2004) (alteration in original) (quoting *Sharood v. Hatfield*, 296 Minn. 416, 423, 210 N.W.2d 275, 279 (1973)).

■■■■ "This court has 'primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and matters of trial and appellate procedure.'" *State v. Lindsey*, 632 N.W.2d 652, 658 (Minn.2001) (quoting *State v. Olson*, 482 N.W.2d 212, 215 (Minn. 1992)). This authority over procedural matters is derived from the court's inherent judicial powers. *Johnson*, 514 N.W.2d at 553. Consequently, while "[t]he legislature has the power to declare what acts are criminal and to establish the punishment for those acts as part of the substantive law[,] * * * the court regulates the method by which the guilt or innocence of

one who is accused of violating a criminal statute is determined." *Lindsey*, 632 N.W.2d at 658 (citation omitted). A statute is procedural, and therefore subject to this court's inherent authority, " 'when it neither creates a new cause of action nor deprives [a] defendant of any defense on the merits.'" *Johnson*, 514 N.W.2d at 555 (quoting *Strauch v. Superior Court*, 107 Cal.App.3d 45, 165 Cal.Rptr. 552 (1980)).

This court has previously construed statutes that set time limits for an appeal as procedural. *See In re Welfare of J.R.*, 655 N.W.2d 1, 2–3 (Minn.2003) (concluding that a rule of juvenile procedure setting time limit for taking an appeal governed instead of a statute setting an identical time limit for taking an appeal). The state argues that the rules of criminal procedure do not preclude the time limit established by section 244.11, subd. 3. But, a statute purporting to govern criminal procedure need not conflict with the rules of procedure in order to violate the separation of powers and be struck down by this court. *See Lindsey*, 632 N.W.2d at 659 (declaring Minn. Stat. § 631.04 (2000) unconstitutional as a violation of the separation of powers despite the absence of a conflicting rule of procedure). Moreover, section 244.11, subd. 3, conflicts with this court's *interpretation* of the rules of criminal procedure in *State v. Fields*. In *Fields*, this court interpreted the rules to allow a probationer to move for modification of the sentence at a probation revocation hearing, occurring long after the original sentence was imposed, and to appeal from a denial of that motion.[7] 416 N.W.2d at 736 (citing Minn.

6. "The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others

except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1.

7. The state correctly points out, however, that Minn. R.Crim. P. 27.03, subd. 9 does not discuss any appeal from the district court's denial of a motion for sentence modification.

R.Crim. P. 27.03, subd. 9). The legislature has attempted to prohibit such an appeal by certain defendants by requiring them to bring a sentencing appeal within 90 days or before they violate probation—whichever deadline passes first. Section 244.11, subd. 3.

Because this court has previously construed statutes setting time limits on taking an appeal as procedural, *see J.R.*, 655 N.W.2d at 3, and because section 244.11, subd. 3, does not create a new cause of action or deprive a defendant of a defense on the merits, the statute unconstitutionally encroaches on a judicial function in violation of the separation of powers under the Minnesota Constitution.

The state argues that the statute does not violate the separation of powers because it is "jurisdictional, not procedural." In addition to this court's implicit rejection of such a distinction in *J.R.*, we have already determined that the legislature may not constitutionally encroach on our appellate jurisdiction. We have "original jurisdiction in such remedial cases as are prescribed by law, and *appellate jurisdiction in all cases.*" Minn. Const. art. VI, § 2 (emphasis added). We have interpreted these constitutional provisions to grant us "constitutionally independent authority to review determinations by the other state courts." *State v. Wingo*, 266 N.W.2d 508, 511 (Minn.1978). Because such authority is granted by the state constitution, the legislature cannot "prohibit or require this court to exercise its appellate jurisdiction."[8] *Id.* at 512. While in the past we

have recognized that "the legislature may enact reasonable regulation of the conditions under which this court's jurisdiction shall be invoked," *In re O'Rourke*, 300 Minn. 158, 163, 220 N.W.2d 811, 815 (1974), such regulations are recognized as a matter of comity. *Wingo*, 266 N.W.2d at 512. To the extent section 244.11, subd. 3, purports to limit this court's ability to hear an appeal in certain cases, it violates the separation of powers by encroaching on this court's power to define its appellate jurisdiction.

Despite these constitutional infirmities, this court can acquiesce to section 244.11, subd. 3, as a matter of comity. *See McCoy*, 682 N.W.2d at 160–61 (recognizing a statutory rule of evidence as a matter of comity despite arguable conflict with Minn. R. Evid. 404(b)); *Wingo*, 266 N.W.2d at 512. We decline to do so, in part, based on the policy, previously expressed in *Fields*, 416 N.W.2d at 736, that a defendant who has been placed on probation should not be required to appeal his or her sentence at the time the sentence is pronounced, and that such a requirement would lead to an increase in sentencing appeals. In addition, we are concerned that a recognition of this statute under comity could limit a defendant's ability to obtain relief from an illegal sentence under Minn. R.Crim. P. 27.03, subd. 9, a possibility the state conceded at oral argument. Having determined section 244.11, subd. 3, to be unconstitutional, Losh's appeal is

*Fields*, in effect, created a new means of appealing a sentence not explicitly provided for in the Rules of Criminal Procedure.

8. This court has noted a potential exception to this rule in stating that "[i]t may well be that the legislature, in creating a substantive right by statute, may, as an element of that substantive right, circumscribe the adjudication of that right more strictly than in other

cases, subject to constitutional requirements of due process." *In re O'Rourke*, 300 Minn. 158, 175 n. 11, 220 N.W.2d 811, 821 n. 11 (1974). This court has already expressly stated that the right of appeal does not fall within this exception. *Wingo*, 266 N.W.2d at 511 n. 7. In addition, the state does not argue that this exception applies in this case.

properly before this court.[9]

## II.

Losh argues that she is entitled to benefit from the rule in *Blakely v. Washington.* The state argues, and the court of appeals held, that because *Blakely* was released after the period to file a direct appeal from Losh's conviction had expired, *Blakely* does not apply retroactively to Losh. *Losh,* 694 N.W.2d at 100–01.[10]

■ In *State v. Shattuck,* pursuant to *Blakely,* we held Section II.D of the Minnesota Sentencing Guidelines to be unconstitutional as applied "insofar as it permits an upward durational departure based on judicial findings." *State v. Shattuck,* 704 N.W.2d 131, 142–43 (Minn.2005). *Blakely* is a new rule of federal constitutional criminal procedure. *See State v. Houston,* 702 N.W.2d 268, 270, 273 (Minn. 2005). A defendant is entitled to benefit from such a "new rule" if the defendant's case is "pending on direct review" when the rule is announced. *O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004) (applying the federal retroactivity framework established by *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and *Teague v. Lane,* 489 U.S. 288, 310–11, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion)). We have held *Blakely* is a new rule, retroactive to cases pending on direct review but not to cases on collateral review (e.g., a petition for postconviction relief). *Houston,* 702 N.W.2d at 269 (syllabus), 270. Whether Losh can receive any benefit from *Blakely,* therefore, turns on whether her case was "pending on direct review" at the time of the *Blakely* decision.[11]

We have recently addressed the question of when a case is pending on direct review. We held that "a case is pending until such time as the availability of direct appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the United States Supreme Court has been filed and finally denied." *O'Meara,* 679 N.W.2d at 336. O'Meara failed to perfect a direct appeal from the judgment of conviction. *Id.* at 340. We held that O'Meara's convic-

---

9. Losh additionally argues that section 244.11, subd. 3, is unconstitutional on the basis that it violates her constitutional right to appellate review of her sentence. Because we invalidate the statute on the ground that it violates the separation of powers, we need not address this issue here.

10. Losh argues that because the state, before the court of appeals, conceded that *Blakely* applied to Losh's case, the state has waived this issue. Losh cites no authority supporting this proposition, however, and the authority she does cite indicates that the state cannot be deemed to have waived arguing this issue on appeal. *See State v. Grunig,* 660 N.W.2d 134, 136 (Minn.2003) (stating waiver rule is administrative rule dictating that appellate courts will not decide issues that were not raised below). Losh raised the issue of *Blakely's* retroactive effect below, and the court of appeals addressed it, so the waiver rule is not applicable here.

11. The dissent draws a distinction between cases that are "pending on direct review" and cases that are "final" based on language in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). As we recognized in *O'Meara,* however, "pending on direct review" and "not yet final" are two ways of saying the same thing in federal retroactivity analysis. *See Schriro v. Summerlin,* 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still *pending on direct review. As to convictions that are already final,* however, the rule applies only in limited circumstances.") (emphasis added) (citation omitted); *O'Meara,* 679 N.W.2d at 339 ("If the conviction is not yet final (i.e., is 'pending') when the Supreme Court announces the rule * * *.").

tion became final on the date that his period for direct appeal ended. *Id.*

██ Like O'Meara, Losh did not perfect an appeal directly from the judgment of conviction. *See* Minn. R.Crim. P. 28.02, subd. 2(1), subd. 4(3) (stating that appeal from final judgment must be taken within 90 days). Under *O'Meara,* Losh's conviction appears to have become final the date her period of direct appeal expired. Losh argues, however, that she is entitled to the benefit of *Blakely* because: (1) for the purposes of determining the retroactive effect of *Blakely,* the *sentence,* not the conviction, must be final, and (2) "direct review" of her *sentence* was pending at the time *Blakely* was decided. Because we conclude that the appeal procedure followed by Losh does not qualify as "direct review" of her sentence, we need not reach the questions of whether "finality of the sentence" (as opposed to "finality of the conviction") is ever the touchstone for determining retroactive effect and whether or not some methods of review of a sentence qualify as "direct review."

Losh argues that she did seek "direct review" of her sentence through the procedure approved by this court in *State v. Fields. Fields,* like the present case, involved a defendant whose sentence was both an upward durational departure and a downward dispositional departure. 416 N.W.2d at 735. In that case, we faced the issue of whether a defendant could challenge a durational departure on appeal from the denial of a motion for sentence modification made at a probation revocation hearing. The defendant in *Fields* challenged the durational departure at the probation revocation hearing, the district court reaffirmed the sentence, and the defendant appealed the district court's decision. *Id.* The court of appeals held that the departure issue could only be attacked on a timely direct appeal from the original judgment of conviction or by a postconviction petition. *Id.* We reversed and remanded, holding that Minn. R.Crim. P. 27.03, subd. 9, allowed a defendant to "challenge the departure by a simple motion at the time of the revocation hearing." *Fields,* 416 N.W.2d at 736.

Neither *Fields* nor subsequent decisions by this court interpreting *Fields* have described such a procedure as a "direct appeal" or "direct review." Losh argues that the policy arguments mentioned in *Fields* support her position that an appeal of a sentence pursuant to *Fields* should be considered *direct review* for retroactivity purposes.[12] In *Fields* this court stated that

12. In addition, the dissent argues that, under the framework of retroactivity analysis laid out by the Supreme Court, Losh should receive the benefit of *Blakely* in this case because: (1) when *Blakely* was decided Losh's availability of appeal had not been exhausted and (2) Losh could petition to the United States Supreme Court for certiorari from this court's judgment in this case. We initially note that the United States Supreme Court has not yet had to classify state appellate review methods (other than direct appeal from judgment of conviction) as either "direct review" or "collateral review."

We agree that Losh was properly pursuing a *Fields* appeal at the time of *Blakely's* decision and that this court's decision of a *Fields*

appeal is a final judgment from which review by writ of certiorari could be granted. *See* 28 U.S.C. § 1257 (2000). But, the availability of appeal and review by writ of certiorari are not themselves sufficient qualities to make a form of appellate review "direct review" for retroactivity purposes. A postconviction petitioner has the ability to appeal a district court's denial of postconviction relief as well as the opportunity to petition the Supreme Court for a writ of certiorari from a final judgment of this court affirming denial of postconviction relief. *See* 28 U.S.C. § 1257 (2000); Minn.Stat. § 590.06 (2004); *see also Snow v. Ault,* 238 F.3d 1033, 1035–36 (8th Cir.2001) (holding statute of limitations for federal habeas corpus petition was not tolled during 90–day period during which petitioner

defendants initially placed on probation often have less incentive to appeal the durational departure. *Id.* at 736. *Fields,* however, did not deal with retroactivity and never described an appeal pursuant to Minn. R.Crim. P. 27.03, subd. 9, as a "direct appeal."[13] Moreover, Losh's appeal pursuant to *Fields* and Minn. R.Crim. P. 27.03, subd. 9, was not her first opportunity to appeal her sentence.[14] *See* Minn. R.Crim. P. 28.02, subd. 2(3); 28.05, subd. 1(1) (allowing appeal from sentence to be taken within 90 days of judgment and sentencing). For these reasons, *Fields* does not provide a basis to hold that Losh's conviction was on "direct review" at the time *Blakely* was decided.[15]

### III.

Losh also argues that the district court abused its discretion in imposing an upward durational departure. Departures from the presumptive sentence are only justified when substantial and compelling circumstances are present in the record. *State v. McIntosh,* 641 N.W.2d 3, 8 (Minn.2002). When reviewing a district court's decision to depart from the presumptive guideline sentence, we review for abuse of discretion. *Taylor v. State,* 670 N.W.2d 584, 588 (Minn.2003). We have established the following rules when reviewing departures:

1. If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.

2. If reasons supporting the departure are stated, this court will examine the record to determine if the reasons justify the departure.

3. If the reasons given justify the departure, the departure will be allowed.

---

could have filed a petition for a writ of certiorari from the denial of state postconviction relief). A state postconviction petition, however, does not qualify as direct review for retroactivity purposes. *See Houston,* 702 N.W.2d at 270.

**13.** As discussed earlier, we decline to recognize section 244.11, subd. 3, as a matter of comity based, in part, on the policies expressed in *Fields.* These policies, however, do not impact our analysis regarding whether a *Fields* appeal qualifies as direct review. As a matter of procedure, we have determined that a probationer should not be *required* to appeal his or her sentence within 90 days of pronouncement of that sentence. It does not follow that this individual should be entitled to benefit from all new rules of federal constitutional criminal procedure which arise between the expiration of the direct appeal period pursuant to Minn. R.Crim. P. 28.02, subd. 2(3); 28.05, subd. 1(1) (within 90 days of judgment and sentencing), and the resolution of any eventual appeal pursuant to *Fields.* Contrary to the dissent, we do not read federal law to require a *Fields* appeal to be classified as a direct review, and such a classification runs contrary to the principle of finality

underlying the federal retroactivity framework applied by this court in *O'Meara* and *Houston. See Teague,* 489 U.S. at 309–10, 109 S.Ct. 1060; *Houston,* 702 N.W.2d at 270–74; *O'Meara,* 679 N.W.2d at 338–40.

**14.** The dissent also argues that our decision treats similarly situated defendants differently by drawing a distinction between a defendant who receives a stay of imposition and a defendant who receives a stay of execution. The dissent is referencing the court of appeals decision in *State v. Beaty,* 696 N.W.2d 406 (Minn.App.2005). In *Beaty,* the court of appeals held that *Blakely* applied retroactively to a defendant when *Blakely* was decided during the defendant's appeal from a probation revocation proceeding in which the district court vacated a stay of imposition and imposed a sentence. 696 N.W.2d at 408–09, 411. No petition for review was filed regarding this decision and the wisdom of *Beaty* is not before this court.

**15.** Because we hold that Losh is not entitled to the retroactive application of *Blakely* on this appeal, we do not reach the issue of whether the rule in *Blakely,* if applied, would entitle Losh to relief.

4. If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify the departure, the departure will be affirmed.

5. If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

*McIntosh*, 641 N.W.2d at 8 (quoting *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985)).

▮▮▮▮ In determining whether to durationally depart from the guideline sentence, the district court considers "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime described in the applicable statute." *State v. Thao*, 649 N.W.2d 414, 421 (Minn.2002). Losh argues that the district court abused its discretion in imposing an upward durational departure because there were no substantial aggravating factors justifying the departure. The state argues that, in addition to the aggravating factor cited by the district court at sentencing (vulnerability of the victim), the departure is supported by two additional aggravating factors: (1) particular cruelty and (2) Losh committed the crime as part of a group of three or more persons who all actively participated in the crime. Because sufficient evidence in the record justifies the latter two grounds for departure, we do not reach the question of whether vulnerability of the victim is an appropriate ground for departure in this case.

A basis for an upward departure can be that "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.2.b(2). The state argues that Jenny was treated with particu-

lar cruelty because he was left, severely injured, in a secluded location by a swamp. Losh admitted to stopping the vehicle by a "pond or * * * bog" and to driving home after Conger and Jenkins left Jenny by the side of the road. While a "district court may not base an upward durational departure on factors that the legislature has already taken into account in determining the degree or seriousness of the offense," *Shattuck*, 704 N.W.2d at 140, Losh's sentence under the guidelines was based on the fact that Jenny suffered "great bodily harm," not on the fact that Jenny was dumped in a remote and unsafe place. *See* Minn.Stat. § 609.25, subd. 2(2); Minn. Sent. Guidelines V (listing kidnapping with "great bodily harm" as a severity level IX offense and kidnapping with "unsafe release" as a severity level VIII offense). Because the evidence shows that Jenny was released in an unsafe place and this factor was not already taken into account in determining the presumptive sentence, the evidence shows that Jenny was treated with particular cruelty for which Losh should be held responsible.

Another basis for upward departure which the state argues is present in this case is "[t]he offender committed the crime as part of a group of three or more persons who all actively participated in the crime." Minn. Sent. Guidelines II. D.2.b(10). In this case, three people were involved in the kidnapping of Jenny. Losh drove the vehicle; Conger and Jenkins placed Jenny in and removed Jenny from the vehicle. The evidence in this case supports this aggravating factor in light of our prior decision in *State v. Hough*, 585 N.W.2d 393, 397 (Minn.1998) (holding this aggravating factor to be present where group of four traveled in vehicle to victim's house, defendant shot at house out of the window of the vehicle, and all departed in the vehicle).

In light of the presence of these two aggravating factors, there is sufficient evidence in the record to justify the departure and the district court did not abuse its discretion in imposing an upward durational departure.

Affirmed.

HANSON, Justice (dissenting).

## DISSENT

Although I agree with the majority's conclusion that Minn.Stat. § 244.11, subd. 3 (2004) is unconstitutional and does not preclude Losh's appeal, I disagree with the majority's conclusion that *Blakely* does not apply to this appeal. The focus of the majority opinion on "direct review" only addresses one element of the federal test for retroactivity and thus does not provide a complete answer to the issue before us. Because the federal test permits retroactivity of a new rule for the conduct of criminal prosecutions to all cases "pending on direct review *or not yet final,*" *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (emphasis added), it is also necessary to determine when Losh's conviction became "final." *Griffith* defines "final" as when the case has "run the full course of appellate review" and "the availability of appeal [has been] exhausted." *Id.* at 321 n. 6 and 323, 107 S.Ct. 708. I conclude that Losh's conviction was not final at the time *Blakely* was announced because, under *State v. Fields,* 416 N.W.2d 734, 736 (Minn.1987), her case had not run the full course of appellate review and her right to direct appeal had not been exhausted. Accordingly, I would reverse the court of appeals and remand the case to the district court for resentencing in light of *Blakely.*

I begin by focusing on the federal law of retroactivity. As we recognized in *O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004), the scope of the retroactivity of a new rule of federal constitutional criminal procedure is for the United States Supreme Court to decide under the United States Constitution. In *Griffith,* the court began the process of achieving greater uniformity in its retroactivity determinations by adopting the view of Justice Harlan that "retroactivity must be rethought." *Griffith,* 479 U.S. at 321–23, 107 S.Ct. 708 (quoting *United States v. Johnson,* 457 U.S. 537, 548, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). The Court then expressed approval of Justice Harlan's concept of finality, quoting from his concurring opinion in *Mackey v. United States,* 401 U.S. 667, 679, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971):

"If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all. * * * In truth, the Court's assertion of power to disregard current law in adjudicating cases before us *that have not already run the full course of appellate review,* is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation." *Mackey v. United States,* 401 U.S., at 679, 91 S.Ct. 1160 (opinion concurring in judgment).

479 U.S. at 323, 107 S.Ct. 708 (emphasis added). The Court defined "final" as follows:

By "final," we mean a case in which a judgment of conviction has been rendered, *the availability of appeal exhausted,* and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. See *United States v. Johnson,* 457 U.S. 537, 542 n. 8, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (citing *Linkletter v. Walker,* 381 U.S. 618, 622

n. 5, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).

479 U.S. at 321 n. 6, 107 S.Ct. 708 (emphasis added).

In *Teague v. Lane,* 489 U.S. 288, 299–310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court further adopted Justice Harlan's view on the limits of finality, concluding that the new rule need not be retroactively applied to cases on "collateral review." But the Court equated "collateral review" with habeas corpus, quoting Justice Harlan as follows:

Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.

*Teague,* 489 U.S. at 306, 109 S.Ct. 1060 (quoting *Mackey,* 401 U.S. at 682–83, 91 S.Ct. 1160).

I take from these cases the understanding that a case is "not yet final" when the availability of appeal has not been exhausted and appellate review has not run its full course. Alternatively, I also take from these cases that "direct review" includes all forms of appellate review that are not considered collateral review. Either way, for Losh, her case was not yet final (because the appeal rights made available in *Fields* had not been exhausted or run their full course) and her case was not on collateral review at the time that *Blakely* was announced.

*O'Meara* does not lead me to a different conclusion because any comments we made in *O'Meara* about when a case is "final" were dicta and, to the extent they were inconsistent with *Griffith* and *Teague,* they are not controlling. We did say in *O'Meara* that the conviction became final on the date the time for direct appeal expired. 679 N.W.2d at 340. But that comment was only fact specific to O'Meara's case. O'Meara's sentence had been executed, not stayed, and thus the conviction did become final when the time for direct appeal expired. And because the new rule of criminal procedure that we were dealing with in *O'Meara* had been announced before the time had expired for O'Meara to take direct appeal, that comment was dicta. Further, we fully recognized the broader rule of *Griffith* and *Teague* that "a case is pending until such time as the availability of appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the Supreme Court has been filed and finally denied." 679 N.W.2d at 339.

For Losh, the questions under *Griffith* and *Teague* are whether, at the time *Blakely* was announced, (1) the availability of an appeal from Losh's conviction had been exhausted (i.e., appellate review of that conviction had run its course), or (2) Losh's appellate rights already had been relegated to collateral review. I would answer those questions in the negative. I would conclude that the consequence of our ruling in *Fields* is that appellate review of a stayed sentence is not exhausted until the time to appeal from any revocation of the stay has expired and that the appellate review of an order denying a motion to modify a stayed sentence is not collateral review.

*Fields* decided that a defendant in Losh's position need not file a postconviction petition to obtain review of his sen-

tence, but could appeal directly from the denial of his motion to modify the sentence when his stay of execution is revoked. We held that a postconviction petition was not preferable, and we concluded that a defendant could challenge his departure by a simple motion when his stay was revoked. Our ruling undoubtedly encouraged persons in Losh's position to forego an immediate appeal and, in my view, provided assurance that they would still be able to receive a full review of their sentences upon revocation. We provided this encouragement and assurance for our own reasons, to avoid the burden on the court system of an "increase in sentencing appeals" that might turn out to be unnecessary. Our ruling in *Fields* necessarily implied that a defendant's right to appellate review of a departure in a stayed sentence would not be exhausted until after revocation of the stay and that such review, when sought after revocation, would not be treated as collateral review. Accordingly, Losh's case meets the criteria of *Griffith* and *Teague* for retroactive application of *Blakely.*

Viewed another way, if we apply the full text of *Griffith,* the definition of finality requires not only that the availability of appeal to our court has been exhausted, but also that the time for a petition for certiorari to the Supreme Court has elapsed or a petition has been denied. *Griffith,* 479 U.S. at 321 n. 6, 107 S.Ct. 708. In view of *Fields,* could Losh petition for certiorari to the United States Supreme Court from the decision of the majority that *Blakely* does not apply to Losh's case? I conclude that such a petition would not be time barred and, accordingly, that Losh's appeal is not yet final.

Finally, I address one of the underlying concerns expressed in Griffith that "selective application of new rules violates the principle of treating similarly related de-fendants the same." *Griffith,* 479 U.S. at 323, 107 S.Ct. 708. I would agree that any retroactivity rule will inevitably have some degree of inequity because the line must be drawn somewhere. But I am concerned that the decision of the majority treats a defendant with a stay of execution of her sentence differently from the class of defendants who are perhaps most similarly situated, those who have received a stay of imposition of their sentences. The latter class of defendants would clearly benefit from a new rule of criminal procedure announced after they were convicted but before the time had expired to appeal their sentence after the stay of imposition was revoked and the sentence executed. Thus, two defendants who committed a crime on the same day could have significantly different laws applied to them, depending on whether they received a stay of execution or a stay of imposition. Yet, these two defendants are more similar to each other than they are to a third defendant whose sentence was immediately executed because the former two are essentially on probation until revocation, while the third is in prison.

For all these reasons, I would reverse the court of appeals' decision and hold that *Blakely* applies to Losh's appeal of the departure made in her sentence.

PAGE, Justice (dissenting).

I join in the dissent of Justice Sam Hanson.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Sam Hanson.