*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1484**

State of Minnesota,
Respondent,

vs.

Jonathan Earl Brown,
Appellant.

**Filed April 4, 2016
Affirmed
Rodenberg, Judge
Dissenting, Cleary, Chief Judge**

Ramsey County District Court
File No. 62-CR-11-1058

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Rodenberg, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant challenges the district court's order revoking his probation. Because the district court properly applied the law and acted within its discretion, we affirm.

## FACTS

In August 2011, appellant Jonathan Earl Brown pleaded guilty to a third-degree criminal sexual conduct charge. Appellant was sentenced to serve 48 months in prison, stayed during 15 years of probation.[1] A special probation condition required appellant to attend a sex-offender-treatment program as directed by his probation officer, and contribute to the cost of the program. Appellant was referred to Project Pathfinder, a sex-offender-treatment program. Appellant missed his first appointment at Project Pathfinder in September 2013. He was charged a copay for the appointment, per Project Pathfinder policy. Appellant arrived at another appointment on May 5, 2014 without the required copay. Project Pathfinder rescheduled that appointment as a result, but appellant then canceled the rescheduled appointment due to his inability to pay the copay. On September 30, 2014, appellant finally attended an appointment, completed the intake process, and scheduled additional appointments for early November.

Appellant's probation agreement also prohibited him from having contact with persons under age 18. In November 2014, appellant violated that prohibition by having contact with his children. The probation officer reported appellant's contact with minors

---

[1] The district court initially imposed a 60-month sentence, but resentenced appellant to the 48-month stayed sentence on December 20, 2012.

to Project Pathfinder. This resulted in appellant's termination from the program. On November 17, 2014, appellant's probation officer recommended that appellant's probation be revoked because he had contact with minors and failed to complete sex-offender treatment. On December 11, 2014, the district court reinstated appellant's probation, with the additional condition that he serve 120 days in the local jail as an intermediate sanction. At the probation-violation hearing, the district court again instructed appellant that he still needed to complete sex-offender treatment, as required by the original probation conditions.

On February 24, 2015, appellant was released from jail. His probation officer testified that, shortly after appellant's release, he instructed appellant to enroll in a treatment program. Because Project Pathfinder previously terminated appellant, he had to reinitiate the intake process to enter that program. Appellant finally contacted Project Pathfinder on April 22 and asked to start the intake process. He was informed that he owed an outstanding balance of approximately $200, which must be paid before he could schedule an intake appointment. At the time of his release from the workhouse, appellant was homeless and unemployed. With the help of his probation officer, appellant sought and received a subsidy from Ramsey County to cover a large portion of the cost of treatment. Appellant also obtained health insurance in April 2015. Appellant enrolled at Minneapolis Community and Technical College in May 2015. His probation officer made several suggestions concerning how he might raise funds to pay his outstanding balance at Project Pathfinder. Those suggestions included applying at temporary employment agencies or selling plasma.

On May 22, 2015, the probation officer requested a warrant for appellant's arrest, based on a police report that appellant again had contact with a minor, and on appellant's failure to complete sex-offender treatment as directed by the court. The probation officer recommended revocation of appellant's probation. At a contested probation-violation hearing on June 15, 2015, the state abandoned the allegation that appellant violated probation by having contact with minors, and the district court did not consider that alleged violation. The district court found that the state had presented clear and convincing evidence that appellant was not enrolled in sex-offender treatment, "nor did he enroll in treatment as specifically directed numerous times by his probation agent." The district court further found that appellant violated a condition of his probation by not entering a sex-offender-treatment program. It found that the violation was intentional and inexcusable, and that the need for confinement outweighed the policies favoring appellant's probation. The district court revoked appellant's probation and executed his sentence. This appeal followed.

## DECISION

When a probationer violates a condition of probation, the district court may continue probation, revoke probation and execute the stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14, subd. 3 (2014). A district court has broad discretion to determine whether there is sufficient evidence to revoke probation and will not be reversed absent an abuse of discretion. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005). Before revoking probation, the district court "must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and

4

3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). These required findings are designed to ensure that revocation is not "a reflexive reaction to an accumulation of technical violations," but is based on "a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotation omitted). We review the district court's assessment of the evidence for an abuse of discretion, but whether the district court "has made the findings required under *Austin* presents a question of law, which is subject to de novo review." *Modtland*, 695 N.W.2d at 605.

**Probation condition violation**

Appellant argues that the evidence was insufficient to prove that he violated a probation condition. He argues that, because he could not afford treatment and was not given a deadline by which he had to complete a treatment program, the district court erred in finding that he failed to complete sex-offender treatment.

It is the state's burden to prove that an offender violated his or her probation terms by clear and convincing evidence. Minn. R. Crim. P. 27.04, subd. 3. Here, the district court found that appellant had signed a probation agreement that included the special condition that appellant must "attend [a] sex offender program per the [probation officer] and contribute to sex offender treatment costs." The district court also found that the state had "presented clear and convincing evidence that [appellant] was not enrolled, nor did he enroll in treatment as specifically directed numerous times by his probation agent."

Although it is true that appellant's probation agreement did not establish a deadline for enrolling in or completing sex-offender treatment, and although appellant's probation

5

was not set to expire until December 20, 2025, the district court found that appellant's probation officer "specifically directed" appellant to enroll in treatment "numerous times" after appellant was released on February 24, 2015. The probation officer testified, "[E]very time I spoke to [appellant] I told him you need to get in treatment now. I said if you don't get in treatment now, pretty soon there is going to be a warrant for your arrest." The district court credited the probation officer's testimony, and we defer to the district court's credibility evaluations in probation-revocation hearings. *State v. Losh*, 694 N.W.2d 98, 102 (Minn. App. 2005), *aff'd on other grounds*, 721 N.W.2d 886 (Minn. 2006). The district court found that appellant "understood that he was running out of time and clearly he was not in treatment." The district court also found that a probation condition required appellant to contribute to the cost of his treatment, and that appellant had not paid the balance he owed to the treatment program.

The district court made the first required *Austin* finding when it found that attending sex-offender treatment according to terms set by the probation officer was a condition of probation that appellant violated when he failed to attend treatment. The record evidence supports the district court's determination that the condition existed, and that appellant violated the condition by failing to attend sex-offender treatment as directed by his probation officer.

**Intentional or inexcusable violation**

Appellant argues that his failure to enter sex-offender treatment was neither intentional nor inexcusable. The district court stated on the record that it found appellant's probation violation both intentional and inexcusable.

6

Appellant could not immediately enroll in treatment upon his release in February 2015 due to his outstanding debt at Project Pathfinder. Where an offender's poverty prevents him or her from satisfying a condition of probation, courts must "inquire into the reasons for the failure to pay" before revoking probation. *State v. Morrow*, 492 N.W.2d 539, 544 (Minn. App. 1992) (quotation omitted).

> If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment.

*Id.* (quoting *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S. Ct. 2064, 2073 (1983)).

Here, the district court implicitly found that appellant did not make sufficient bona fide efforts to pay his accumulated costs to enter treatment. The district court found that while appellant "may have had good intentions, he didn't . . . act on those intentions." Appellant's probation officer testified that he had suggested legal methods by which appellant could earn money. The district court credited this testimony and noted on the record that this agent is "not the kind of probation agent . . . [who] is quick to file a probation violation . . . . [He] tries very hard to work with his clients . . . to avoid having to come back to court [on a reported] violation." The district court found that appellant "could have come up with a way to get some minimal money to do what [he] needed to do to pay a small co-pay." The court addressed appellant during the hearing, stating:

> [F]or whatever reason, I don't know if your experiences in the past with the court have said to you that, you know, we don't

7

> take things seriously or whatever, there is not going to be the kind of consequences that you think it's worth sort of dragging your feet or whatever, but you haven't done what you needed to do.

The district court implicitly found that appellant was not reasonably attempting to do the things necessary to get back into treatment. We review implicit findings for clear error. *See Vettleson v. Special Sch. Dist. No. 1*, 361 N.W.2d 425, 428 (Minn. App. 1985) (applying the clearly erroneous standard to an implicit finding of fact). And the district court's implicit finding of appellant's lack of reasonable efforts is not clearly erroneous.

The record also supports the conclusion that appellant's efforts to initiate contact with his treatment program once he was released from the workhouse on February 24, 2015 were minimal and insufficient. Appellant did not call Project Pathfinder to start the intake process until nearly two months after his release. The district court characterized this as "belated contact" with the treatment program. And this was not the first time appellant had been slow to comply with the treatment requirement that was a condition of his probation. Appellant's probation officer testified, "[W]hen he first was released [in 2012], he attempted to get into treatment. It took forever. He never actually entered the program as far as the treatment sessions go."

The district court made the second required *Austin* finding. The district court, being in the best position to make such a determination, found that appellant's failure to attend sex-offender treatment was intentional and inexcusable. The record supports that finding.

8

**Need for confinement**

In order to make the third required *Austin* finding, a district court must determine that at least one of the following factors is present:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Modtland*, 695 N.W.2d at 607 (quoting *Austin*, 295 N.W.2d at 251). Even when a court finds that a violation is intentional or inexcusable, public policy favors revocation only where at least one of these three factors supports execution of a prison sentence. *State v. Cottew*, 746 N.W.2d 632, 636 (Minn. 2008).

Here, the district court stated on the record that appellant's "confinement is necessary to protect the public from any further criminal activity and it would truly depreciate the seriousness of this violation at this point in time if the sentence were not executed." The district court, concerned that appellant is "an untreated sex offender in our community," reviewed appellant's criminal history and noted his multiple convictions for violating the predatory-offender-registration law since 2010. The district court interpreted appellant's actions as a pattern of "non-compliance with the law," and expressed surprise that the probation officer waited as long as he did before filing a violation report, "given the nature of the charge and the potential danger to the community."

In November 2014, appellant had received an intermediate sanction as a result of his prohibited contact with minors and his failure to complete sex-offender treatment. At that violation hearing, the district court again told appellant that he still needed to complete

sex-offender treatment. Upon his release in February 2015, appellant did not make immediate contact with the treatment program as instructed by the district court and by his supervising agent. After appellant belatedly contacted Project Pathfinder, another month passed before his probation officer filed the violation at issue here. During all of this time, appellant remained an untreated sex offender. Presented with appellant's continued failure to seek treatment, the district court acted within its discretion when it revoked appellant's probation after finding that appellant must be confined to protect the public from further criminal activity.

The district court also found that it would unduly depreciate the seriousness of the violation if probation were not revoked. The court addressed appellant, stating, "[F]or whatever reason, I don't think that you've grasped that when a judge says specifically in relation to an offense like this, you're not going to be granted a lot of latitude and a lot of time to comply." The district court was referring to appellant's November 2014 probation violation and the direction from the court that he must enter sex-offender treatment expeditiously after completing his jail sentence for that violation. The court continued, stating, "As far as I'm concerned, you used up your opportunities for probation in the community. We don't have unlimited resources for individuals to keep trying and trying and trying again." The district court's statements clearly indicate its determination that appellant is not taking his probation conditions seriously, and that affording appellant additional opportunities to comply would unduly minimize his pattern of noncompliance with important probation conditions. The district court made the third required *Austin*

10

finding and did not abuse its discretion in determining that the evidence weighed against continued probation.

Although the district court might have reached a different conclusion on this record, it thoroughly analyzed the evidence and applied each *Austin* factor, stating its findings in a lengthy record. The court drew supportable conclusions from the evidence. It acted within its discretion when it revoked appellant's probation.

**Affirmed.**

**CLEARY**, Chief Judge (dissenting)

> Dollars! All their cares, hopes, joys, affections, virtues, and associations, seemed to be melted down into dollars. . . . Men were weighed by their dollars, measures gauged by their dollars; life was auctioneered, appraised, put up, and knocked down for its dollars.[1]

Charles Dickens

I respectfully dissent from the majority's opinion. While the district court made the three required *Austin* findings, the evidence was insufficient to support revocation of appellant's probation.

The Minnesota Supreme Court has instructed district courts to revoke an offender's probation "only as a last resort when treatment has failed." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Courts must balance an offender's interest in freedom and the state's interest in rehabilitating the offender and protecting the public from criminal activity. *Id.* "The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotations omitted).

The district court found that appellant did not make sufficient efforts to pay his debt and attend sex-offender treatment, and that as a consequence his probation violation was intentional and inexcusable, but did not inquire adequately into the reasons for appellant's failure to pay before revoking his probation. *See State v. Morrow*, 492 N.W.2d 539, 544 (Minn. App. 1992). ("If the probationer could not pay despite bona fide efforts to acquire

---

[1] *The Life and Adventures of Martin Chuzzlewit*, 121 (1872).

the resources to do so, the court must consider alternative measures of punishment other than imprisonment." (quoting *Bearden v. Georgia*, 461 U.S. 660, 666, 103 S. Ct. 2064, 2069 (1983))). In not adequately inquiring, the district court failed to consider and acknowledge the challenges of homelessness and joblessness. After his release from jail in February 2015, appellant was required to pay a $200 debt to Project Pathfinder before he could reinitiate the program's intake process. Going forward, appellant was expected to pay a $42 co-payment for each treatment session. These are not insignificant sums for a probationer without permanent housing and employment. We should not lose sight of what it means to live on the street while trying to survive. The next meal has a tendency to take priority over multiple co-payments. Appellant's probation officer suggested that appellant sell his blood to cover the cost of treatment. Putting aside the offensive nature of requiring a man to sell his blood or face prison time, any funds that appellant might acquire in such a manner would presumably be needed to cover other living expenses as well.

It appears that this probation violation hearing was precipitated primarily by an allegation of alleged contact with minors. But that allegation was dropped, and all that was left was the failure to pay for treatment. It is true that, as the district court found, appellant is an untreated sex offender. But treatment in the community is available to appellant, if he first pays a $200 debt and then pays $42 for every treatment session thereafter. The record does not show that treatment in the community has failed. Rather appellant's untreated condition arises from his lack of financial resources.

Appellant's probation officer expressed frustration with appellant's failure to enter treatment, but he also testified to appellant's efforts to acquire resources that would allow him to begin treatment. Appellant applied for and received health insurance and a subsidy to help him cover the cost of treatment. Appellant was also making efforts to enroll in school. The district court did not explain why these were not sufficient bona fide efforts to pay the debt that was a barrier to appellant's treatment. Appellant's probation agreement did not set a deadline for enrolling in or completing sex-offender treatment and his probation did not expire until December of 2025.

Make no mistake: this violation hearing was about money, or the lack thereof. Requiring those without means to make co-payments before receiving treatment sets those probationers up for failure. If sex-offender treatment is truly an important part of offender rehabilitation and if the public safety is at issue, as it appears to be, the state should be prepared to pay for the treatment and seek reimbursement from probationers after they have completed treatment. By preventing indigent sex offenders from receiving sex-offender treatment due to lack of funds, the state is undervaluing public safety.

The alleged probation violation was not proved by clear and convincing evidence. Specifically, it was an abuse of discretion by the district court to find that the violation was intentional and inexcusable. I would reverse the district court's order revoking probation.